## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

---

BERTRAM LOEB,                          ::

     Plaintiff,          ::

    v.                          ::

BANK OF AMERICA                 :: Case No. 02-CV-3833

and                                          ::

HERBERT S. GARTEN, ESQUIRE;   ::

SHELDON G. DAGURT, ESQUIRE;

FEDDER & GARTEN, P.A.

     Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF THE LAW FIRM DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

DUANE MORRIS LLP
Melissa H. Maxman
Charlene Keller Fullmer
Suite 4200
One Liberty Place
Philadelphia, Pennsylvania 19103-7396
tel.: (215) 979-1000
fax: (215) 979-1020

Attorneys for Defendants Herbert S. Garten,
Esquire, Sheldon G. Dagurt, Esquire, and Fedder
and Garten Professional Association

Of Counsel:
Andrew Jay Graham
Geoffrey H. Genth
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
tel.: (410) 752-6030
fax: (410) 539-1269

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................. 2

    A.  The Law Firm Defendants ...................................................................... 2

    B.  Beta ........................................................................................................ 3

    C.  The Trusts And The Ownership Of Beta ............................................... 5

    D.  Mr. Garten's Incidental Contacts With Pennsylvania ........................... 7

    E.  Plaintiff's Complaint ............................................................................. 8

    F.  Location Of Witnesses And Documents ............................................... 9

    G.  Choice Of Law Issues ........................................................................... 10

III.  ARGUMENT ................................................................................................... 11

    A.  Plaintiff's Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(2) For Lack Of Personal Jurisdiction .................................................. 11

    B.  Plaintiff's Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(3) for Failure to Establish Venue. .......................................................... 13

    C.  In The Event That This Court Does Not Dismiss This Action, Transfer to The District of Maryland Is Appropriate Under 28 U.S.C. § 1404(a). ....................... 15

IV.  CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*Berube v. Brister*, 140 F.R.D. 258 (D.R.I. 1992) ........................................................ 14

*Cote v. Wadel*, 796 F.2d 981 (7th Cir. 1986) ............................................................ 12

*Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291 (3d Cir. 1994) ..................... 13, 15

*FDIC v. Malmo*, 939 F.2d 535 (8th Cir.1991) ........................................................... 12

*Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3d Cir. 1985) ................. 11, 12

*Henshell Corporation v. Childerston*, Civ. A. No. 99-2972, 1999 WL 549027 (E.D. Pa. July 28, 1999) ........................................................................................... 12, 14

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154 (1945); ................................. 11

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) ........................................... 16

*Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7 (1st Cir. 1986) ..................... 12

*Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S. Ct. 2710 (1979) ........................ 13

*Mayes v. Leipziger*, 674 F.2d 178 (2d Cir. 1982) ...................................................... 12

*Mellon Bank (East) PSFS, N.A. v. Farino*, 960 F.2d 1217 (3d Cir. 1992) ............................ 11

*Modern Mailers, Inc. v. Johnson & Quin, Inc.*, 844 F. Supp. 1048 (E.D. Pa. 1994) ................. 14

*Nagele v. Holy Redeemer Visiting Nurse Agency, Inc.*, 813 F. Supp. 1143 (E.D. Pa. 1993) ..... 13

*Porter v. Berall*, 293 F.3d 1073 (8th Cir. 2002) ...................................................... 12

*Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587 (3d Cir. 1982) ................................................................................................... 12

*Roetenberg v. King & Everhard, P.C.*, Civ. A. No. 00-1452, 2000 WL 1705787 (E.D. Pa. 2000) ...................................................................................................... 11

*Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F. Supp. 731 (S.D.N.Y. 1996) ...................................................................................... 14

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) .................................................... 12

*Turner v. Pemberton*, 558 F. Supp. 1065 (D.S.C. 1983) .............................................. 14

## STATUTES

28 U.S.C. § 1391(a) ................................................................................ 2, 13, 14, 15

28 U.S.C. § 1404(a) ................................................................................ 1, 2, 15, 17

42 Pa. Cons. Stat. Ann. § 5301 ............................................................... 11

42 Pa. Cons. Stat. Ann. § 5322 (Supp. 1992) ........................................ 11

Fed. R. Civ. P. 12(b)(2) .......................................................................... 1, 11, 17

Fed. R. Civ. P. 12(b)(3) .......................................................................... 1, 13, 17

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BERTRAM LOEB, | : |
| Plaintiff, | : |
| | : |
| v. | : Case No. 02-CV-3833 |
| | : |
| BANK OF AMERICA | : |
| and | : |
| HERBERT S. GARTEN, ESQUIRE; | : |
| SHELDON G. DAGURT, ESQUIRE; | : |
| FEDDER & GARTEN, P.A. | : |
| | : |
| Defendants. | : |

## MEMORANDUM OF LAW IN SUPPORT OF THE LAW FIRM DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

By their undersigned attorneys, Defendants Herbert S. Garten, Esquire ("Mr. Garten"), Sheldon G. Dagurt, Esquire ("Mr. Dagurt"), and Fedder and Garten Professional Association ("F&G") (collectively, "the Law Firm Defendants"), submit the following points and authorities in support of their motion pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) to dismiss for lack of personal jurisdiction and for improper venue or, in the alternative, to transfer pursuant to 28 U.S.C. § 1404(a):

## I.    INTRODUCTION

Beta Corporation ("Beta") is a Maryland corporation that is managed and operated in Maryland. Plaintiff Bertram Loeb ("Plaintiff") is a 2.9% shareholder in, board member, and a Vice President of Beta. Plaintiff has filed this lawsuit challenging fees and commissions that Beta paid with its board's prior approval to the law firm (F&G) of Beta's President (Mr. Garten). As Defendants, Plaintiff's complaint names: (a) the Bank of America, which is co-trustee of

trusts that own 74.68% of Beta's stock; (b) Mr. Garten, a Maryland lawyer and co-trustee of the trusts; (c) Mr. Dagurt, a Maryland lawyer who is a principal of F&G, an officer of Beta, and a member of Beta's Board of Directors; and (d) F&G, a Baltimore law firm.

For numerous reasons, this lawsuit cannot and should not proceed in the Eastern District of Pennsylvania.  First, none of the Law Firm Defendants is subject to personal jurisdiction in the Commonwealth of Pennsylvania.  Second, Plaintiff has not alleged and cannot prove any of the prerequisites for venue under 28 U.S.C. § 1391(a).  Finally, even assuming *arguendo* that the lack of personal jurisdiction and the improper venue could be overlooked, it would remain clear that this lawsuit should be transferred to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a).

## II.    STATEMENT OF FACTS

### A.    The Law Firm Defendants

Messrs. Garten and Dagurt are Maryland attorneys who practice law and reside in Maryland.  *See* Affidavit of Mr. Garten, attached hereto as Exhibit ("Ex.") A, ¶ 1; Affidavit of Mr. Dagurt, attached hereto as Ex. B, ¶ 1.  Mr. Garten has practiced law continuously in Maryland from 1952 through the present, and Mr. Dagurt, from 1962 through the present.  Ex. A, ¶ 1; Ex. B, ¶ 1.

Messrs. Garten and Dagurt are principals of F&G, a law firm located in Baltimore, Maryland.  Ex. A, ¶ 2; Ex. B, ¶ 2.  Like their colleagues at F&G, Messrs. Garten and Dagurt are not admitted to the Pennsylvania bar, and have never practiced or held themselves out as Pennsylvania attorneys.  Ex. A, ¶ 3; Ex. B, ¶ 3.  Messrs. Garten and Dagurt and F&G do not regularly transact business in Pennsylvania.  Ex. A, ¶ 3; Ex. B, ¶ 3.

**B.**     **Beta**

Beta is, and at all pertinent times has been, a Maryland corporation engaged in the ownership of commercial real estate. Ex. A, ¶ 4. Beta was organized under Maryland law in 1948. Copies of Beta's certificate of incorporation and by-laws are collectively attached hereto as Ex. C.

Beta was founded and initially operated by Sidney Lust, a District of Columbia resident who died in 1955. Ex. A, ¶ 4. Beta's real-estate holdings were in Beltsville and Bethesda, Maryland. *Id*. In more recent years, Beta has engaged in tax-free exchanges of its former Maryland real estate and used the proceeds of those exchanges to purchase commercial properties located in Oxnard, California and Loveland, Colorado. *Id.*, ¶ 5.

Beta has never owned or even contemplated owning real property or other property in Pennsylvania. *Id.*, ¶ 6. Indeed, to the best of Mr. Garten's knowledge, Beta has never done any business in Pennsylvania. *Id*. In the ordinary course, Beta has directed communications to board members and shareholders in a variety of states including Pennsylvania. *Id*.

From Sidney Lust's death in 1955 until 1981, Beta was managed by W. Edward White of the trust department of the then Suburban Trust Company of Silver Springs, Maryland. *Id.*, ¶ 7. Since 1981, Beta has been managed, in Maryland, by its President, Mr. Garten, under the supervision of a five-member Board of Directors. *Id*. Meetings of Beta's Board of Directors are conducted in Maryland. *Id*. Beta's Board of Directors has never met in Pennsylvania. *Id*. Beta has never had an office or been actively managed on a day-to-day basis from any state other than Maryland. *Id*. An established and reputable Maryland CPA firm regularly handles all of Beta's accounting matters and issues financial reports to Beta's directors and shareholders. *Id.*

The current members of Beta's Board of Directors are Mr. Garten, Mr. Dagurt, Plaintiff, Karlyn Loeb, and Douglas Ayers ("Mr. Ayers"). *Id.*, ¶ 8. Mr. Ayers is a Texas resident employed by the Bank of America. *Id.*

From 1990 until June 19, 2002, S. Allen Snook ("Mr. Snook") was a member of Beta's Board of Directors. *Id.*, ¶ 9. Mr. Snook is a trust officer who is a former employee of Maryland National Bank and its successors or affiliates, NationsBank of Maryland, N.A., and the Bank of America *Id.* (Since 1981 – with the exception of the period from approximately July, 1999 [when Mr. Snook left the Bank of America to join Wilmington Trust Company] to June, 2002 – each of the banking entities that has been co-trustee of the Celia Kolbe Trust [discussed below] has had one of its representatives sit as a member of Beta's Board of Directors.) *Id.* Mr. Snook resides in Maryland. *Id.* To the best of Mr. Garten's knowledge, Mr. Snook has never maintained an office in Pennsylvania. *Id.*

Although Mr. Snook was scheduled and expected to be re-elected to Beta's Board of Directors at the shareholders' meeting conducted in Maryland on June 19, 2002, he requested that he not be re-elected – a request which the shareholders granted by not re-electing him. *Id.*

To the best of Mr. Garten's recollection, he has never done business in Pennsylvania on Beta's behalf. Ex. A, ¶ 10.[1] Mr. Dagurt has never entered Pennsylvania in connection with any matter directly or indirectly related to Beta. Ex. B, ¶ 4. Mr. Dagurt never authorized Mr. Garten to act in Pennsylvania on Mr. Dagurt's behalf with regard to any such matter. Ex. A, ¶ 1; Ex. B, ¶ 4.

---

[1]    As set forth below, in 1989 Mr. Garten met with Plaintiff and Malcolm and Karlyn Loeb in Pennsylvania to discuss Beta's responses to certain bids on Maryland real estate, and in 1992, Mr. Garten attended a dinner in Pennsylvania at Plaintiff's invitation and at which Beta's operations were briefly discussed.

The thrust of Plaintiff's complaint in this case is that Plaintiff believes Beta has improperly paid fees and commissions to F&G. The challenged transactions – all of which were disclosed to and approved in advance by Beta's Board of Directors – involved payments in Maryland by a Maryland corporation to a Maryland law firm. *Id*., ¶ 11.

### C.     The Trusts And The Ownership Of Beta

There are 1,000 outstanding shares of Beta stock. *Id*., ¶ 12. Of those 1,000 shares, a total of 746.8 are owned by three trusts (collectively, "the Trusts"). *Id*. One of the Trusts was established by Celia Kolbe, the widow of Beta's founder. *Id*. Celia Kolbe was originally the owner in her sole name of 500 shares or 50% of Beta's stock. *Id*. The other two Trusts were respectively established by each of her nephews (Malcolm Loeb and Plaintiff). *Id*.

At present, the three Trusts and their respective holdings in Beta are as follows:

(a)     the Trust U/A of Celia Kolbe , dated 6/21/71 ("the Celia Kolbe Trust") – 365.8 shares;

(b)     the Malcolm Loeb Irrevocable Trust U/A 11/13/96 ("the Malcolm Loeb Trust") – 205 shares; and

(c)     the Bertram Loeb Family Irrevocable Trust U/A 11/13/96 ("the Bertram Loeb Trust") – 176 shares.

*Id*., ¶ 13. A copy of a list of Beta's shareholders showing their current Beta holdings is attached hereto as Ex. D. (The shareholders' list has been redacted to protect the privacy of other individual shareholders.)

Although Plaintiff is a beneficiary of the Celia Kolbe Trust and was the grantor of the Bertram Loeb Trust, he is not a beneficiary and has no rights under the Malcolm Loeb Trust. Ex. A, ¶ 13. The Celia Kolbe Trust and the Bertram Loeb Trust were established and exist under Maryland law. *Id.*, ¶ 14. Consequently, Maryland law governs the parties' rights and obligations pursuant to each of the two trusts with which Plaintiff has a direct connection. *Id*.

Celia Kolbe and Malcom Loeb are deceased. *Id.*, ¶ 15. Karlyn Loeb is Malcolm Loeb's widow. *Id.*

Each of the Trusts has two trustees, Mr. Garten and the Bank of America. *Id.*, ¶ 16. The Bank of America is a successor trustee of corporate predecessors or affiliates, each of which was a Maryland bank. *Id.* All trustees of the Trusts have always been based in Baltimore, Maryland. *Id.* All meetings of Beta's stockholders have occurred in Maryland. *Id.*

An additional 224.2 shares of Beta stock are owned by five grandchildren of Sidney Lust and Celia Kolbe. *Id.*, ¶ 17; Ex. D. Of those five grandchildren, two are Maryland residents, and the other three are spread evenly among Connecticut, New Jersey, and North Carolina. *Id.*; Ex. D.

Plaintiff directly owns 29 shares or 2.9% of Beta's stock. Ex. A, ¶ 18; Ex. D. Plaintiff's percentage of direct ownership in Beta is smaller than that of any other Beta shareholder. Ex. A, ¶ 18; Ex. D.

In 1996, Mr. Snook, other representatives of NationsBank of Maryland, N.A., Roland M. Schrebler (a Maryland resident and a principal of F&G) ("Mr. Schrebler"), and Mr. Garten met with Plaintiff in Maryland to discuss Plaintiff's intention to establish what would become the Bertram Loeb Trust. *Id.*, ¶ 19. Neither Mr. Garten nor any other member of F&G ever traveled to Pennsylvania in connection with the Bertram Loeb Trust, either before or after its establishment. *Id.* Plaintiff established the Bertram Loeb Trust based on a plan proposed to him by Mr. Snook and his associates at NationsBank of Maryland, N.A., which proposal Messrs. Schrebler and Garten analyzed in Maryland at Plaintiff's request. *Id.*

Plaintiff established the Bertram Loeb Trust by signing a trust instrument in Maryland in November, 1996. *Id.* Paragraph 17 of the Bertram Loeb Trust provides, "[a]ll questions pertaining to the validity of any trust hereunder and its construction and administration shall be

determined in accordance with the laws of Maryland, unless otherwise herein expressly provided." *Id.*

Plaintiff's complaint in this case does not appear to challenge any transactions by the Trusts. *Id.*, ¶ 20. Instead, the gist of his complaint is that certain payments, which Beta's Board of Directors authorized Beta to make to F&G, constituted a breach of Mr. Garten's fiduciary duty to Plaintiff as a beneficiary of the Celia Kolbe Trust and the Bertram Loeb Trust. *Id.* The challenged payments were made by execution and delivery – in Maryland by the Bank of America or its predecessor trustees – of checks drawn on Maryland accounts. *Id.*[2]

### D.     Mr. Garten's Incidental Contacts With Pennsylvania

In the 1980's and early 1990's, Mr. Garten performed certain trust work for Celia Kolbe's two sisters. Ex. A, ¶ 21. In connection with that work, Mr. Garten met with Ms. Kolbe's sisters in Florida, which was their domicile. *Id.* Messrs. Snook and Garten also visited the two sisters in Pennsylvania on one and perhaps two occasions in 1991, when the two sisters temporarily recuperated from various illnesses at a Pennsylvania nursing home. *Id.* Mr. Garten believes he may have also visited the sisters on one occasion at the home of Malcolm and Karylyn Loeb. *Id.* Both of the sisters died in Florida, and their estates were settled under Florida law in Florida courts. *Id.*

Mr. Garten met with Plaintiff and Malcolm and Karlyn Loeb at the home of Malcolm and Karlyn Loeb on Saturday, January 21, 1989 to discuss a list of responses to requests for bids that Mr. Garten had received in connection with the Beltsville real estate. Ex. A, ¶ 22. At Plaintiff's

---

[2]     In response to Plaintiff's inquiries about the fees and a commission paid during the period January 1, 2000, through February 28, 2002, Howard Weiss wrote to Plaintiff on March 21, 2002, to assert that the payments to F&G had been fair and reasonable, and to demonstrate that, had the work been handled by the Bank of America rather than the Law Firm Defendants, the payments would have totaled over 27% more than what the Law Firm Defendants actually received. A copy of Mr. Weiss' March 21 letter is attached hereto as Ex. E. Rather than respond to Mr. Weiss' assertions (or try to pursue his agenda through the proper channels of corporate governance), Plaintiff filed this lawsuit.

invitation, Brian Gibbons (a then-principal of F&G) and Mr. Garten had dinner with Plaintiff at the Four Seasons Hotel in Philadelphia, Pennsylvania, on November 23, 1992, with Mr. Snook and Malcolm and Karlyn Loeb in attendance. *Id.* Mr. Garten briefly updated Plaintiff concerning Beta's operations during that 1992 dinner meeting. *Id.* To the best of his knowledge, in his twenty-one years as Beta's President, Mr. Garten has never otherwise met Plaintiff, Plaintiff's son Curtis Loeb, Malcolm Loeb, or Karlyn Loeb in Pennsylvania in connection with Beta or any legal work. *Id.*

     **E.**     **Plaintiff's Complaint**

On or about June 18, 2002, Plaintiff initiated this lawsuit by filing his complaint in this Court. As discussed, the allegations of Plaintiff's complaint focus on fees and commissions that Beta paid to F&G with the approval of Beta's Board of Directors. Plaintiff alleges that, in receiving those commissions and fees, F&G acted improperly. According to Plaintiff, Mr. Garten and F&G are also liable for their role in establishing the Bertram Loeb Trust. Plaintiff alleges that Mr. Dagurt has acted negligently as a member of Beta's Board of Directors, and that the Bank of America has acted negligently as a trustee in permitting payment of the pertinent fees and commissions.

As to the issue of personal jurisdiction, Plaintiff's complaint alleges that:

     (a)     Mr. Garten visited Pennsylvania "in or about 1990 . . . to prepare estate planning documents" for Celia Kolbe's sisters;

     (b)     all four Defendants have engaged in actions outside Pennsylvania that have purportedly damaged Plaintiff in Pennsylvania;

     (c)     Mr. Garten and F&G performed and billed Plaintiff, a Pennsylvania resident, for estate-planning work, and solicited such work from Plaintiff's son, who is also a Pennsylvania resident; and

   (d)  the Bank of America regularly does business in the
      Commonwealth of Pennsylvania.

Complaint, ¶ 9.

  As to the issue of venue, the complaint alleges that (a) "some of the events complained of herein occurred in this judicial district," and (b) the Bank of America and Mr. Garten "regularly transact business" in this judicial district and with its residents.  *Id.*, ¶¶ 10 and 11.

  **F.**  **Location Of Witnesses And Documents**

  The main fact witnesses in this action are likely to include:

   (a)  the five members of Beta's Board of Directors through
      June 18, 2002 – three of whom (*i.e.*, Messrs. Snook,
      Dagurt, and Garten) are Maryland residents;

   (b)  Howard Weiss, a Maryland resident and trust officer of the
      Bank of America who has attended all meetings of Beta's
      Board of Directors since March 9, 2000;

   (c)  Mr. Ayers, a member of Beta's Board of Directors since
      June 18, 2002 and a Texas resident;

   (d)  Mr. Schrebler, a Maryland resident;

   (e)  Lawrence Macklin, Esquire, and other officials of the Bank
      of America who reside and work in Maryland;

   (f)  Mr. Gibbons, a Maryland resident; and

   (g)  the Maryland certified public accountants who service Beta.

Ex. A, ¶ 23.

  Potential subjects of expert testimony in this case include:

   (a)  the standard of reasonable care that Maryland law requires
      of directors and officers of Maryland corporations;

   (b)  the standard of reasonable care that Maryland law requires
      of Maryland attorneys; and

   (c)  the standard of reasonable care that Maryland law requires
      of trustees of Maryland trusts.

Ex. A, ¶ 24.  It is likely that persons qualified to offer expert testimony on those subjects will be Maryland residents and not Pennsylvania residents.  *Id*.  There do not appear to be any subjects of potential expert testimony that involve any standards of care under Pennsylvania law.  *Id*.  The vast majority of the relevant documentary evidence in this case is located in Maryland at F&G or the Bank of America.  *Id*., ¶ 25.

### G.    Choice Of Law Issues

Each of the potentially complex legal issues in this case appears to arise under Maryland law.  Ex. A, ¶ 26.  For example, in this case there are questions of: (a) Maryland state law governing the duties of corporate officers and directors; (b) Maryland state law concerning trusts and fiduciary duties; (c) the Maryland state law of legal malpractice; and (4) the Maryland law of limitations and laches.  *Id*.[3]  In contrast, no relevant legal issues appear to arise under Pennsylvania law.  *Id*.

---

[3]    Subject to the "discovery" rule, Maryland's generally applicable statute of limitations is three years.  Plaintiff's complaint, however, challenges transactions which occurred in 1988, 1994, and 1996, and which were the subject of timely prior disclosures to Plaintiff and the other members of Beta's Board of Directors.  *See, e.g.*, complaint, ¶¶ 47-49, 60-70.

## III.    ARGUMENT

### A.    Plaintiff's Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(2) For Lack Of Personal Jurisdiction.

The first reason for dismissal is the absence of personal jurisdiction over the Law Firm Defendants.

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of proving that the defendant's contacts with the forum state were sufficient for the exercise of personal jurisdiction. *Mellon Bank (East) PSFS, N.A. v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). This Court has potential jurisdiction over the Law Firm Defendants only to the "extent permissible under the law of the state where the district court sits." *Id.* at 1221. As this Court observed in *Roetenberg v. King & Everhard, P.C.*, Civ. A. No. 00-1452, 2000 WL 1705787, at *3 (E.D. Pa. 2000):

> Under Pennsylvania's long-arm statutes, there are two potential bases for the exercise of personal jurisdiction over a non-resident defendant, specific jurisdiction and general jurisdiction. Specific jurisdiction allows a court to exercise personal jurisdiction over a person to the extent that the cause of action arises out of the person's transaction of business within Pennsylvania. 42 Pa. Cons. Stat. Ann. § 5322 (Supp. 1992). . . . General jurisdiction under 42 Pa. Cons. Stat. Ann. § 5301, however, is grounded in the defendant's general activity within Pennsylvania and requires that the defendant is carrying on a "continuous or systematic part of its general business within this Commonwealth." General personal jurisdiction requires substantially more contacts with the forum before a court may properly exercise general personal jurisdiction.

To assert personal jurisdiction over a non-resident defendant, traditional notions of fair play and substantial justice must not be offended. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 541 (3d Cir. 1985). There must have been some act whereby the "defendant purposefully

avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Gehling*, 773 F.2d at 541.

Overwhelming federal authority involving analogous facts shows that personal jurisdiction does not exist over the Law Firm Defendants. *See, e.g.*, *Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002); *Sawtelle v. Farrell*, 70 F.3d 1381, 1390-1391 (1st Cir. 1995); *FDIC v. Malmo*, 939 F.2d 535, 536-37 (8th Cir.1991); *Cote v. Wadel*, 796 F.2d 981, 984 (7th Cir. 1986); *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7, 11 (1st Cir. 1986); *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982); *Mayes v. Leipziger*, 674 F.2d 178, 185 (2d Cir. 1982); *Henshell Corporation v. Childerston,* Civ. A. No. 99-2972, 1999 WL 549027, *4 n.2 (E.D. Pa. July 28, 1999).

Plaintiff's potential arguments for the existence of personal jurisdiction in this case are indistinguishable from the arguments rejected by the federal circuit courts and by this Court in the above-cited cases. As those decisions hold, minimum contacts are not established where a claimant alleges that acts outside the forum state caused the claimant injury within the forum state, or that the attorney solicited business inside the forum state. In this case, the record demonstrates that:

    (a)    the Law Firm Defendants do not regularly do business in Pennsylvania (*see* Ex. A, ¶¶ 1-3, 10, 21-22; Ex. B, ¶¶ 1-4); and

    (b)    this dispute does not arise from alleged acts or omissions in Pennsylvania (*see* Ex. A, ¶¶ 4-26).

Because personal jurisdiction over the Law Firm Defendants is lacking in the Commonwealth of Pennsylvania, the complaint should be dismissed.

**B.    Plaintiff's Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(3) for Failure to Establish Venue.**

The complaint and the record in this case make it crystal clear that venue is improper in this district.

In this diversity action, venue is governed by 28 U.S.C. § 1391(a), which provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in
>
>> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>>
>> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>>
>> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

In most instances, the purpose of the federal venue statutes is to protect defendants against the risk that a plaintiff will select an inconvenient or unfair place for trial. *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 183-184, 99 S. Ct. 2710, 2716 (1979). Thus, the venue statute:

> favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be 'substantial.' Events or omissions that might only have some tangential connection with the dispute in litigation are not enough. Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.

*Cottman Transmission Systems, Inc. v. Martino,* 36 F.3d 291, 294 (3d Cir. 1994).

The federal courts refuse to find venue proper where the events or omissions in question have only insubstantial contacts with the forum district. *See, e.g., Nagele v. Holy Redeemer Visiting Nurse Agency, Inc.*, 813 F. Supp. 1143, 1146 (E.D. Pa. 1993); *Berube v. Brister*, 140

13

F.R.D. 258, 260 (D.R.I. 1992). Thus, this Court and other federal courts have not hesitated to find venue improper where a claimant alleges legal malpractice: (a) by attorneys who live outside the forum district; (b) arising out of legal work which they performed outside the forum district; and (c) which was only tangentially related to the forum district. *See, e.g, Henshell,* WL 549027 at *3; *Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger*, *P.C.*, 927 F. Supp. 731, 736 (S.D.N.Y. 1996); *Turner v. Pemberton*, 558 F. Supp. 1065, 1069-70 (D.S.C. 1983).

Particularly when viewed in light of the foregoing authorities, Plaintiff's complaint and the affidavits of Messrs. Garten and Dagurt confirm that the requirements of § 1391(a) are not met, and that venue is improper in the Eastern District of Pennsylvania. Of § 1391(a)'s three subsections, only subsection (a)(2) is even potentially applicable to this case.[4] As discussed, subsection (a)(2) authorizes venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

Plaintiff's complaint does not contain any allegations sufficient to satisfy § 1391(a). Indeed, rather than even trying to meet the required standard of a "substantial" connection, paragraph 10 of the complaint lamely alleges that only "*some* of the events complained herein occurred in this judicial district." (Emphasis supplied). Review of the whole complaint, however, discloses that the complaint does not specify which (if any) of the pertinent "events" allegedly occurred in the Eastern District of Pennsylvania. As a matter of fact, it is virtually certain that *none* of the pertinent "events or omissions" occurred in this judicial district.

Although Paragraph 11 of the complaint alleges (falsely) that the Bank and Mr. Garten

---

[4]    Subsection (a)(1) applies only when multiple defendants reside in different judicial districts within the forum state. Subsection (a)(3) is inapplicable because "there is . . . [a district, *i.e.*, the District of Maryland] in which the action may . . . be brought." *See, e.g., Modern Mailers, Inc. v. Johnson & Quin, Inc.*, 844 F. Supp. 1048, 1055 (E.D. Pa. 1994).

regularly transact business in this judicial district and that venue is therefore proper, such factual

allegations are irrelevant to the application of § 1391(a). As the Third Circuit observed in

*Cottman*, "[t]he test for determining venue is not the defendant's 'contacts' with a particular

district, but rather the location of those 'events or omissions giving rise to the claim . . . .'" 36

F.3d at 291.

As Plaintiff's inadequate allegations on venue reveal, Plaintiff apparently commenced this

case with the unrealistic and reckless expectation that Defendants and the Court would somehow

overlook the obvious. However, the lack of proper venue in this case is as glaring as it is

significant. Because this is a Maryland case involving a Maryland corporation, Maryland

trustees, and Maryland attorneys, the record emphatically rebuts any potential contention by

Plaintiff that a "substantial part of the events or omissions giving rise to [his] claim" occurred in

the Eastern District of Pennsylvania.

Plaintiff cannot meet any of the venue standards set forth in § 1391(a), and this case

should therefore be dismissed for improper venue.

**C.    In The Event That This Court Does Not Dismiss This Action, Transfer to
The District of Maryland Is Appropriate Under 28 U.S.C. § 1404(a).**

Even assuming *arguendo* that the lack of personal jurisdiction or proper venue could be

disregarded, the convenience of the parties, witnesses, and the courts would still mandate

discretionary transfer to the District of Maryland pursuant to 28 U.S.C. § 1404(a).

Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interests

of justice, a district court may transfer any civil action to any other district or division where it

might have been brought." The Third Circuit has directed that, in ruling on a motion to transfer

under § 1404(a), trial courts should consider a number of relevant factors:

> The private interests have included: plaintiff's forum preference as
> manifested in the original choice; the defendant's preference;
> whether the claim arose elsewhere; the convenience of the parties

15

> as indicated by their relative physical and financial condition; the
> convenience of the witnesses – but only to the extent that the
> witnesses may actually be unavailable for trial in one of the fora;
> and the location of books and records (similarly limited to the
> extent that the files could not be produced in the alternative
> forum).
>
> *    *    *
>
> The public interests have included: the enforceability of the
> judgment; practical considerations that could make the trial easy,
> expeditious, or inexpensive; the relative administrative difficulty in
> the two fora resulting from court congestion; the local interest in
> deciding local controversies at home; the public policies of the
> fora; and the familiarity of the trial judge with the applicable state
> law in diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

The record in this case makes plain that the relevant factors weigh decisively in favor of transfer. In this dispute, a lone plaintiff has sued two Maryland attorneys, a Maryland law firm, and a national bank for alleged acts and omissions in Maryland and relating to the operation of a Maryland corporation. Ex. A, ¶ 20. For reasons discussed above, Plaintiff's alleged claim arose in Maryland.

Moreover, it would be more convenient for the vast majority of non-party "fact" witnesses – including Messrs. Snook, Weiss, Schrebler, Ayers, Gibbons, and Macklin, other officials of Bank of America who reside and work in Maryland, and Beta's Maryland certified public accountants – if this case proceeded in Maryland. *Id.*, ¶ 23. Likewise, given the legal issues present in this case, any expert witnesses are likely to be Maryland residents, and the vast majority of documentary evidence is in Maryland. *Id.*, ¶¶ 24-25.

Finally, the interests of justice and judicial efficiency show that this forum is inconvenient because this Court would logically be expected to be primarily familiar with Pennsylvania state law rather than Maryland state law. Resolution of this diversity case may involve legal questions arising under: (a) Maryland state law governing the duties of corporate

officers and directors; (b) Maryland state law concerning trusts and fiduciary duties; (c) the

Maryland state law of legal malpractice; and (d) the Maryland law of limitations and laches. *Id.*,

¶ 26. In contrast, no relevant legal issues appear to arise under Pennsylvania law. *Id.*

Particularly in view of the convenience and availability of the Maryland forum, it makes no

practical sense for this Court to handle a case in which issues of Maryland state law predominate.

For all these reasons, a discretionary transfer would be necessary and appropriate, even if

this Court could somehow disregard the absence of jurisdiction or venue.

## IV.    CONCLUSION

Because personal jurisdiction over the Law Firm Defendants does not exist in

Pennsylvania and because venue is obviously improper, the Law Firm Defendants respectfully

request that the Court dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(2) and

12(b)(3). In the alternative, Defendants request this Court to transfer this case to the District of

Columbia pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted,

_____

Melissa H. Maxman
Charlene Keller Fullmer
DUANE MORRIS LLP
Suite 4200
One Liberty Place
Philadelphia, Pennsylvania 19103-7396
tel.: (215) 979-1000
fax: (215) 979-1020

Attorneys for Defendants Herbert S. Garten,
Esquire, Sheldon G. Dagurt, Esquire, and Fedder
and Garten Professional Association

Of Counsel:
Andrew Jay Graham
Geoffrey H. Genth
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
tel.: (410) 752-6030
fax: (410) 539-1269

Dated: August 19, 2002