## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERTRAM LOEB | : | |
| | : | |
| v. | : | No. 02-CV-3833 |
| | : | |
| BANK OF AMERICA, | : | |
| HERBERT S. GARTEN, ESQUIRE, | : | |
| SHELDON G. DAGURT, ESQUIRE, and | : | JURY TRIAL DEMANDED |
| FEDDER & GARTEN, P.A. | : | |

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS, MOTIONS TO TRANSFER VENUE, MOTION TO REQUIRE A MORE DEFINITE STATEMENT AND MOTION TO STRIKE IRRELEVANT ALLEGATIONS[1]

### I.    Introduction

In this case, an elderly Pennsylvania resident, plaintiff Bertram Loeb ("Loeb"), has been the victim of gross violations of fiduciary duty, malpractice, negligence, fraud and conspiracy, by professionals in whom he reposed his trust and confidence.   In his 159 paragraph Complaint, Loeb sets forth the detailed bases for his claims.   Defendants' motions to dismiss do not change the underlying facts, which unequivocally demonstrate the unlawful conduct directed towards Loeb and which dictate a finding that jurisdiction and venue is appropriate in the Eastern District of Pennsylvania.   This Court has jurisdiction over all of the defendants and Loeb seeks this Court's assistance in redressing the egregious wrongs detailed  in his Complaint.

Defendants' motions to dismiss, motions to transfer venue, motion to require a more definite statement and motion to strike irrelevant allegations are nothing but procedural roadblocks that have been planted by the defendants and should be denied in their entirety for the reasons set forth below.

---

[1] Plaintiff has consolidated its responses to Defendants' motions into one brief in the interest of clarity and efficiency.

II.    **Factual and Procedural History**

A.    **Factual History**

Loeb is a 73 year old man who has resided in Springfield, Pennsylvania for 47 years. He has limited formal education and relies heavily upon the professionals he retains to protect his interests. *See* Affidavit of Betram Loeb, ¶¶ 3,7, hereafter "Loeb Aff. ¶ __", attached hereto as Exhibit "A". The relationship between Loeb and defendants Bank of America, Herbert S. Garten, Esquire ("Garten"), Sheldon D. Dagurt, Esquire ("Dagurt"), and Fedder and Garten, P.A. spans more than thirty years. This relationship with the defendants involves Loeb and various members of his family, including his aunts, parents and children. The relationship started back in 1971 when defendants Garten, and in turn Fedder & Garten, P.A., drafted the Celia Lust Kolbe Revocable Trust (the "Kolbe Trust"). Plaintiff was named as a beneficiary of the Kolbe Trust.

Defendant Garten was named as one of the trustees of the Kolbe Trust, and maintains that position today. Defendant Bank of America's predecessor in interest, the Maryland National Bank, was also named a trustee of the Kolbe Trust, and the Bank of America also maintains that position today.

The relationship between Loeb and the defendants continued through the years and involved a myriad of transactions. These transactions included the purchase and sale of numerous real estate investments held by Beta Corporation, a corporation owned by Loeb, the Bertram Loeb Irrevocable Trust (the "Loeb Trust"), the Kolbe Trust, and various other trusts which have Loeb's relatives as beneficiaries.

During the entire time that these relationships existed, Loeb resided in Springfield, Pennsylvania. Innumerable correspondence and telephone calls were exchanged between Loeb and the defendants, and the defendants traveled to Pennsylvania to discuss the operations of Beta

Corporation and the trusts at issue in this litigation. *See* Loeb Affidavit, ¶¶11, 12, 13. In addition to appointing himself as co-Trustee to the trusts at issue, defendant Garten also solicited Loeb at his home to provide estate planning services. *See* Loeb Affidavit, ¶4. Garten, and in turn Fedder & Garten, drafted the Betram Loeb Irrevocable Trust and also created a family limited partnership for Loeb. Once again, there were numerous telephone and written correspondence that were exchanged in conjunction with this work. *See* Loeb Affidavit. Although Fedder & Garten never submitted a written representation letter to Loeb, they forwarded invoices for legal services provided from 1996 through the events described herein. *See* Loeb Affidavit, ¶8.

All of these contacts and transactions with Loeb occurred while the defendants were acting as officers and directors of Beta Corporation, the trustees of the Kolbe and Loeb Trusts, and as Loeb's attorney. During the entire course of this relationship, Loeb lived in the Eastern District of Pennsylvania and received letters, telephone calls, invoices for legal services, and other documents at his home in Springfield, Pennsylvania. *See* Loeb Affidavit.

Unfortunately, the relationship has culminated in this lawsuit. The central issues to Loeb's Complaint revolve around: (1) whether the trustees breached their duty of loyalty to Loeb as a trust beneficiary when Garten served as co-trustee while also serving as a corporate officer, director, and counsel to Beta Corporation; (2) whether the trustees breached their duty of loyalty to Loeb when they profited from transactions that conflicted with their fiduciary duties as trustee; and (3) whether the Bank of America as trustee breached their duty of loyalty to Loeb when they failed to object to the wrongful actions of their co-trustee.

**B.    <u>Procedural History</u>**

Plaintiff filed his complaint on June 18, 2002. The complaint contains six counts: (I) Breach of Fiduciary Duty/Relationship of Trust and Confidence; (II) Fraud; (III) Negligent

Misrepresentation; (IV) Negligence/Malpractice; (V) Common-Law Conspiracy; and (VI) Constructive Trust, Demand for Accounting and Removal of Defendants as Fiduciaries.

Loeb filed suit against defendants Bank of America, Herbert S. Garten, Esquire, Sheldon D. Dagurt, Esquire, and Fedder and Garten, P.A.  Plaintiff is seeking the removal of defendants from their positions as trustees, fiduciaries, and/or  corporate officers and directors.  Plaintiff is also seeking an accounting of all fees paid to defendants, interest, costs, and punitive damages for defendants' wrongful conduct.

On or about July 22, 2002, all defendants filed waiver of service of summons.

The motions before the Court are (1) Bank of America's Motion to Dismiss Plaintiff's Complaint for Failure to Comply with Applicable Law; or in the Alternative, to Transfer Venue to the District of Maryland; or in the Further Alternative, to Require a More Definite Statement and to Strike Irrelevant Allegations and (2) defendants Herbert S. Garten, Esquire's, Sheldon G. Dagurt, Esquire's and Fedder & Garten, P.A.'s (collectively the "Law Firm Defendants") Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1404(a).[2]

For the reasons that follow, Plaintiff Bertram Loeb respectfully requests that the Court deny these motions in their entirety.

III.    **Argument**

    A.    **This Court has Personal Jurisdiction over all Defendants and the Law Firm's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) Should be Denied[3]**

---

[2]  The Law Firm Defendants adopted and incorporated Bank of America's motions in their response.

[3]  Bank of America does not contend that this Court lacks power over it.  Further, due to its continuous and systematic contacts with the Commonwealth of Pennsylvania, it is clear that the Court has general jurisdiction over Bank of America.

1.  Standard of Review

A court deciding a motion to dismiss for lack of personal jurisdiction has considerable procedural leeway. *See* Leonard A. Feinberg, Inc. v. Central Asia Capital Corp., 936 F. Supp. 250, 253 (E.D. Pa. 1996). It may determine the motion on the basis of affidavits alone or it may permit discovery in aid of the motion or it may conduct an evidentiary hearing on the merits of the motion. Id. *citing* Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir.1981). If the court decides not to conduct an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdiction through its affidavits and supporting materials. Id. The plaintiff must eventually establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial but, until such a hearing is held, a prima facie showing suffices to defeat the motion, notwithstanding any controverting presentation by the moving party. *See* Id. A plaintiff makes a prima facie showing if it establishes, with reasonable particularity, sufficient contacts between the defendant and the forum state. *See* Mellon Bank (East) PSFS Nat'l Assoc. v. Farino, 960 F.2d 1217, 1223 (3d Cir.1992).

In determining whether the plaintiff has made a prima facie showing, the court considers only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction. *See* Feinberg, 936 F. Supp. at 254 *citing* Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). A plaintiff can defeat a motion to dismiss if it makes a showing as to every fact required to satisfy both the forum's long arm statute and the due process clause of the Constitution. Id. This Court must accept as true the allegations in the complaint, and resolve any factual issues in favor of the Plaintiff. *See* North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990) *cert. denied*, 498 U.S. 847 (1990).

2.  Personal Jurisdiction is Proper Under The Federal Rules of Civil Procedure And Pennsylvania's Long Arm Statute

Pursuant to Fed. R. Civ. P. 4(e), this Court may exercise personal jurisdiction over the defendants to the extent allowed by state law.  *See* Fed. R. Civ. P. 4(e); *see also* North Penn Gas Co., 897 F.2d at 689.  To determine whether personal jurisdiction exists over a nonresident, a district court sitting in diversity must first look to the forum state for authorization of jurisdiction through the forum state's long arm statute, and second, if the long arm statute does, in fact, confer jurisdiction, it must comport with the Due Process Clause of the United States Constitution.  *See* Provident Nat'l Bank v. California Federal Savings & Loan Assoc., 819 F.2d 434, 436 (3d Cir.1987); Amos v. Pendry, 810 F. Supp. 146, 148 (M.D. Pa. 1992).

Pennsylvania's long arm statute permits the Court to assert jurisdiction to the full extent allowed by the Due Process Clause of the United States Constitution.[4]  *See* Ultimate Resource, Inc. v. Goss, 2000 WL 295107, *2 (E.D. Pa. 2000) *citing* 42 Pa. Cons. Stat. Ann. §5322(b).

3.    The Court Has Specific Personal Jurisdiction Over The Law Firm Defendants

The Supreme Court has delineated two types of personal jurisdiction:  general jurisdiction and specific jurisdiction.  *See generally* Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984).  General jurisdiction finds minimum contacts from an ongoing series of contacts with the forum state.  Id.  Specific jurisdiction, also known as transactional jurisdiction, exists when "the cause of action arises from the defendant's forum-related activities."  IMO Indus. Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).

In order for specific jurisdiction to be properly exercised under the Due Process Clause, the plaintiff must set forward facts to satisfy a two part test.  *See* Id.  "First, the plaintiff must show that the defendant has constitutionally sufficient 'minimum contacts' with the forum."  Id. *citing* Burger

---

[4] Pennsylvania's long arm statute also specifies that  courts may exercise personal jurisdiction over anyone "[c]ausing harm or tortious injury by an act or omission in this Commonwealth [or] [c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth."  42 Pa. Cons. Stat. Ann. § 5322(a)(3) & (4).

King v. Rudzewicz, 471 U.S. 462, 474 (1985).  "Second, for jurisdiction to be exercised, the court

must determine, in its discretion, 'that to do so would comport with traditional notions of fair play

and substantial justice.'"  Id. citing Vertotex Certainteed Corp. v. Cons. Fiber Glass Products Co.,

75 F.3d 147, 150 (3d Cir. 1996) citing in turn International Shoe Co. v. Washington, 326 U.S. 310

(1945).  The inquiry under both prongs focuses on "the relationship among the defendant, the forum,

and the litigation."  Helicopteros, 466 U.S. at 414, 104 S.Ct. at 1872.

> a.   The Law Firm Defendants Have Constitutionally Sufficient Minimum
>      Contacts With The Forum

"Even a single contact can be sufficient to establish the minimum necessary to satisfy due

process."  Giusto v. Ashland Chem. Co., 994 F. Supp. 587, 592 (E.D. Pa. 1998) (holding that an out

of state person had minimum contacts based upon a single event; a libelous submission sent to a

Pennsylvania State agency affecting the reputation of a Pennsylvania resident).  Moreover, under the

Supreme Court's holding in Calder v. Jones, " an intentional tort directed at the plaintiff and having

sufficient impact upon it in the forum, may suffice to enhance otherwise insufficient contacts with the

forum such that the "minimum contacts" prong of the Due Process test is satisfied."  IMO, 155 F.3d

at 260 citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 (1984); see also Calder v. Jones,

463 U.S. 1235 (1983).

Minimum contacts will also be found when a defendant purposefully directs its activities

toward the forum, "thus availing itself of the benefits and protections of the forum's law, such that

its should 'reasonably anticipate being haled into court there.'" Supra Medical Corp. v. McGonigle,

955 F. Supp. 374, 382 (E.D. Pa. 1997) citing Burger King, 471 U.S. 472-77.  Events such as

soliciting business in the forum, Ultimate Resource, Inc. v. Goss, 2000 WL 295107, * 2 (E.D. Pa.

2000) (personal jurisdiction found where defendant solicited business in the forum and entered into

an ongoing relationship with forum resident), establishing a relationship of trust and confidence with

a resident of the forum, <u>Paolino v. Channel Home Centers</u>, 668 F.2d 721, 724 (3d Cir. 1982) (personal jurisdiction found where defendant knowingly entered into a relationship of trust with forum resident), and establishing an ongoing relationship, <u>Mellon Bank (East) PSFS, N.A. v. Farino</u>, 960 F.2d 1217,1222 (3d Cir. 1992), will also support the assertion of personal jurisdiction under the minimum contacts analysis.

The <u>Paolino</u> case, cited above, is analogous to the situation facing Loeb. In <u>Paolino</u>, a Pennsylvania resident developed an apparatus for reclaiming heat that would otherwise be wasted in an industrial process. *See* <u>Paolino</u>, 668 F.2d at 722. Air Control learned about this technology and approached Paolino to purchase the intellectual property for making this device. *See* <u>Id</u>. at 723. Paolino and Air Control established a "relationship of trust and confidence which should have prevented Air Control from exploiting the device without Paolino's consent." <u>Id</u>. However, Air Control, in violation of its duties, sold the technology to a third party without Paolino's consent. *See* <u>Id</u>. When Paolino brought suit to recover damages for Air Control's wrongful acts, Air Control sought to dismiss Paolino's complaint arguing that it did not have the necessary minimum contacts to allow an assertion of personal jurisdiction by the Eastern District of Pennsylvania. <u>Id</u>.

The court recognized that Air Control was not qualified to do business in Pennsylvania, nor did it maintain offices in Pennsylvania. <u>Id</u>. The court also acknowledged that the alleged tortious activity occurred outside of the district. <u>Id</u>.

Despite this seeming lack of contacts with the Eastern District of Pennsylvania, the court held that the Eastern District of Pennsylvania had power over Air Control due to Pennsylvania's Long Arm Statute which renders those who commit a tort which causes harm in Pennsylvania to be subject to jurisdiction of the Pennsylvania courts. *See* <u>Id</u>. at 724. The court held that when a party induces a Pennsylvania resident to enter into a relationship of trust and confidence and then breaches that

relationship, thus causing harm to the Pennsylvania resident, those acts are sufficient to allow the court to assert personal jurisdiction over the wrongdoer. *See* Id. at 724-25.

Turning to the case *sub judice*, it is clear that the Law Firm Defendants have the requisite minimum contacts which make the assertion of specific jurisdiction proper. Moreover, under the reasoning of Paolino, the defendants, all of whom maintain a relationship of trust and confidence with Loeb, have committed a tort which has harmed Loeb, a Pennsylvania resident.

Loeb has brought suit against the Law Firm Defendants and Bank of America based upon their actions in the Eastern District of Pennsylvania, to wit: (1) the breaches of fiduciary duty while Garten served concurrently as trustee for the Loeb and Kolbe Trusts, officer and director of Beta Corporation, and attorney for Beta Corporation and Loeb; (2) fraud, misrepresentation, and conspiracy in respect to the administration of the trusts at issue in this case; and (3) the breaches of duties owed by Garten to Loeb in the context of their attorney client relationship.

Looking first at the "standard" contacts by the Law Firm Defendants, it is clear that minimum contacts have been established. Defendant Garten has:

(1)     Sent voluminous correspondence to plaintiff Loeb at Loeb's home in Springfield, PA; *see* Loeb Aff. ¶ 11;

(2)     Made telephone calls to plaintiff Loeb at Loeb's home in Springfield, Pennsylvania; *see* Loeb Aff. ¶ 12;

(3)     Received telephone calls from plaintiff Loeb from his home in Springfield, Pennsylvania; *see* Loeb Aff. ¶ 12;

(4)     Solicited Loeb to provide estate planning and legal services; *see* Complaint ¶¶ 71-90; *see also* Loeb Aff. ¶ 4;

(5)     Established an ongoing relationship as attorney for Loeb; *see* Loeb Aff. ¶ 14;

(6)     Established an ongoing relationship as trustee[5] to trusts which had Loeb as a settlor and/or beneficiary;  *see* Loeb Aff. ¶¶ 7, 9, 11;

(7)     Established an ongoing relationship as an officer and director of Beta Corporation, whose shares are owned by Loeb individually, as settlor to a trust, and as a beneficiary of a trust; *see* Loeb Aff. ¶¶ 9, 11;

(8)     Met with plaintiff in 1989, in Pennsylvania, to discuss matters related to Beta Corporation; *see* Loeb Aff. ¶13; *see also* Garten Affidavit ¶¶ 10, 22, attached to the Law Firm Defendants' Motion to Dismiss;

(9)     Met with plaintiff in 1992, in Pennsylvania, to discuss matters related to Beta Corporation; *see* Loeb Aff. ¶ 13; *see also* Garten Aff. ¶¶ 10, 22;

(10)     Met with plaintiff to discuss Beta Corporation business when visiting plaintiff's aunts on at least five separate occasions; *see* Loeb Aff. ¶ 13.

(11)     Met with Plaintiff to discuss Beta Corporation business at the funeral of plaintiff's brother, Malcolm Loeb; *see* Loeb Aff. ¶ 13.

Defendant Dagurt has at least the following contacts with the jurisdiction:

(1)     Established an ongoing relationship as an officer and director of Beta Corporation, whose shares are owned by Loeb individually, as settlor to a trust, and as a beneficiary of a trust; *see* Loeb Aff. ¶¶ 10; 11;

(2)     Sent correspondence to plaintiff Loeb at Loeb's home in Springfield, Pennsylvania,; *see* Loeb Aff. ¶ 11;

---

[5]  Unbelievably, Garten also appointed his son, Lawrence M. Garten to act as successor trustee against the wishes of Loeb.  *See* Complaint ¶ 80.  Thus ensuring that he, his son, and Fedder & Garten, P.A. would continue to have an ongoing relationship with Loeb.

(3)    Participated in telephone calls to Plaintiff at Plaintiff's home in Springfield, Pennsylvania, regarding Loeb's taxes; *see* Loeb Aff. ¶ 12; and

(4)    Received telephone calls from Plaintiff from Plaintiff's home in Springfield, Pennsylvania, regarding Loeb's taxes, *see* Loeb Aff. ¶ 12.

Finally, this Court has power over defendant Fedder & Garten, P.A. under the basic law of agency.  "The contacts of non-resident attorneys with the state were attributable under elemental principles of agency law to firms for which attorneys worked in determining whether law firms could be subject to personal jurisdiction in state without violating due process." Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995)(cited by defendants); *accord* Kroger Co. v. Dornbos, 408 F.2d 813, 816 (6th Cir. 1969); Dagesse v. Plant Hotel, N.V., 113 F. Supp. 2d 211, 216 (D. N.H. 2000) (under basic principles of agency law, forum-related contacts made by agent acting within the scope of the agency relationship are attributable to principal).

In addition to the "standard" contacts listed above, the totality of circumstances surrounding this case demonstrate that this Court has power over the defendants.  Most importantly, the facts of this case are analogous to Paolino.  Loeb's complaint alleges tortious injury at the hands of the defendants.  Regardless of whether the tort was committed in Pennsylvania or not, the effects of the tort, namely economic injury, was felt by Loeb as a trust beneficiary and shareholder of Beta Corporation in the Eastern District of Pennsylvania.

Further, as in Ultimate Resource, Garten and Fedder & Garten, P.A. have solicited business in the forum.  Thus, they have "availed themselves of the benefits of the forum" and should be subject to suit in the Eastern District of Pennsylvania.  *See* Supra Medical Corp., 955 F. Supp. at 382.  The defendants should not now be heard to complain about being haled into court in a jurisdiction in which they have solicited business.  Lastly, as in Ultimate Resources, Mellon Bank and Paolino, all

of the Law Firm Defendants have knowingly entered into an ongoing relationship of trust and confidence with a resident of the Eastern District of Pennsylvania.

Due to the ample contacts that all of the Law Firm Defendants have with the Eastern District of Pennsylvania, as well as the ongoing nature of the relationship between the Law Firm Defendants and Loeb, this Court has personal jurisdiction over all defendants, and the defendants' motions to dismiss should be denied.

> b.    The Exercise of Specific Jurisdiction Over the Law Firm Defendants Comports with Traditional Notions of Fair Play and Substantial Justice

Once the plaintiff has proffered evidence to demonstrate that the defendants have the requisite minimum contacts with the forum, the defendant bears the burden to show that despite these minimum contacts, the court should still not hear the case because to do so would offend traditional notions of fair play and substantial justice. *See* Supra Medical Corp., 955 F. Supp. at 381. In short, the Law Firm Defendants have failed to satisfy their burden in establishing that jurisdiction would be unreasonable in this case.

The Law Firm Defendants, in their motion to dismiss, do not allege that asserting personal jurisdiction over them would offend "traditional notions of fair play and substantial justice." Rather, they focus on allegations that the Law Firm Defendants lack minimum contacts with the forum. As noted above, their argument with respect to any purported lack of minimum contacts is without merit. Id.

Moreover, the cases contained in the lengthy string cite which the Law Firm Defendants rely upon are all completely distinguishable. For example, Reliance Steel did not involve an ongoing relationship, or a solicitation in the forum, like the present case. *See* Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587 (3d Cir. 1982).

Likewise, the court in <u>Kowalski</u> declined to assert personal jurisdiction over defendants because there had been no tortious "effect" alleged to have occurred in the state.  *See* <u>Kowalski v. Doherty, Wallace, Pillsbury and Murphy</u>, 787 F.2d 7, 10 (1st Cir. 1986).  That is plainly not the case *sub judice* where Loeb has suffered economic harm in the forum.

Lastly, the case of <u>Mayes v. Leipziger</u> is unlike this case because the  long arm statute there was much narrower than Pennsylvania's long arm statute .  *See* <u>Mayes v. Leipziger</u>, 674 F.2d 178, 180 (2d Cir. 1982).  Specifically, the long arm statute in <u>Mayes</u> did not allow an assertion of personal jurisdiction for a tort committed outside of the state, although the harm may have been  felt within the state.  *See* <u>Id</u>.  Pennsylvania's long arm statute does allow for jurisdiction under those circumstances.  *See* 42 Pa. Cons. Stat. Ann. § 5322(a)(3) & (4).

The Court has personal jurisdiction over the Law Firm Defendants and exercising that jurisdiction will not offend traditional notions of fair play and substantial justice.

**B.    <u>Venue is Proper in The Eastern District of Pennsylvania</u>**

As a threshold matter, venue is primarily a matter of choosing a convenient forum.  *See* <u>Leroy v. Great Western United Corp.</u>, 443 U.S. 173, 180 (1979).  The purpose of the venue statute is to prevent a plaintiff from forum shopping and also to make sure that a defendant is not forced to litigate a claim in a distant, unknown forum.  *See* e.g. <u>Cottman Transmission Systems, Inc. v. Martino</u>, 36 F.3d 291, 294 (3d Cir. 1994).

The federal venue statute provides:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . .

28 U.S.C. §1391(a)(2).  The comments following this statute, as well as existing case law, make clear that so long as a "substantial" part of the events giving rise to the claim occurred in the venue, venue

is proper.  28 U.S.C. §1391(a)(2), *comments*.  "The district court should accept venue if the activities that transpired in the forum district were not insubstantial." Andrade v. Chojnacki, 934 F. Supp. 817, 826 (S.D. Tex. 1996). Further, if a substantial portion of events took place in one venue, that venue should not be disqualified even if another venue had a larger more substantial portion of the events occur there.  *See* Figgie International v. Destileria Serralles, Inc., 925 F. Supp. 411, 413 (D. S.C. 1996) *citing* 28 U.S.C. §1391(a)(2), *comments*.  Lastly, the statute "does not require a majority of the events take place there, nor that the challenged forum be the best forum for the lawsuit to be venued."  Park Inn Int'l, LLC v. Mody Enterprises, Inc., 105 F. Supp. 2d 370, 376 (D. N.J. 2000).


When there are events that occur in the chosen venue and the harm or impact occurs in the chosen venue, the plaintiff's choice of venue is a "factor to be accorded substantial weight." Neufeld v. Neufeld, 910 F. Supp. 977, 986 (S.D.N.Y. 1996).  Also, "where an injured party is located within the chosen venue, that factor can be considered *a* substantial part of the events for venue purposes." Torchmark Corp. v. Rice, 945 F. Supp. 172, 179 ( E.D. Ark. 1996) (Emphasis in original).

Torchmark provides a useful illustration of when venue is proper.  Torchmark involved allegations of misrepresentations in connection with the purchase of stock.  *See* Id. at 174.  The plaintiff Torchmark, was a Delaware corporation with its principal place of business in Arkansas. Defendants were citizens of several states including Florida, Colorado and Texas.  *See* Id.

The plaintiff brought suit in the district in which its principal place of business was located, Arkansas, using 28 U.S.C. § 1391(a)(2) as the basis for venue.  *See* Id. at 179.  The defendants sought to dismiss the complaint for improper venue.  *See* Id.  The defendants argued that the Northern District of Texas was the district "where a substantial part of the events giving rise to the claim occurred."  Id.

The court, in explaining why the plaintiff's choice of venue was proper, noted that venue does not depend on which forum may have the most substantial contacts, but rather, whether the plaintiff's choice of venue has a substantial connection to the claim.  *See* <u>Id</u>.  The court held that where the parties had one meeting in the venue, exchanged correspondence and telephone calls, and the allegedly injured party is located in the venue, venue was properly laid.  *See* <u>Id</u>.

Here as in <u>Torchmark</u>, venue is proper in the Eastern District of Pennsylvania.  All of the defendants have exchanged voluminous correspondence with the plaintiff who resides in the district.  *See* Loeb Aff. ¶ 11.  Additionally, all of the defendants have participated in telephone calls with the plaintiff at his home in the district.  *See* Loeb Aff. ¶ 12.  Moreover, the harm that Loeb is alleging has had its impact in the Eastern District of Pennsylvania.  *See* Complaint ¶¶ 133, 141, 145, 149, 156.

Defendants' attempts to elevate form over substance do not change the fact that venue is appropriate in the Eastern District of Pennsylvania.  The fact that Plaintiff's complaint states that "some of the events took place in this venue," *see* Complaint ¶ 10, does not mean that these events were not substantial.  As is evident from the complaint, the Loeb Affidavit, as well as the personal jurisdiction and venue transfer arguments, these events giving rise to Loeb's claim in Pennsylvania are clearly substantial.

Finally, from a policy perspective, plaintiff's choice of venue is in accord with the purpose of the federal venue statute.  The defendants are not being forced to litigate in a distant unforeseeable venue.  Defendants are engaged in an ongoing relationship with a resident of the Eastern District of Pennsylvania.  It is reasonable that they should be called to account in this venue when they caused injury here.  Therefore, defendants' motion to dismiss for improper venue should be denied.

**C.    Transfer is Not Warranted Under The Doctrine of *Forum Non Conveniens*, 28 U.S.C. §1406(a) or 28 U.S.C. §1404(a)**

Defendants make alternative arguments based upon 28 U.S.C. §§ 1404(a), 1406(a) and the doctrine of *forum non conveniens* that venue should be transferred to the District Court for the District of Maryland. However, the Defendants fail to carry their burden and demonstrate that venue should be transferred.

If venue in a federal civil action is improper, the court may dismiss or, as is more common, transfer the case under 28 U.S.C. §1406(a) to a proper forum. If venue is proper, but another federal district court would be a more convenient forum, the case may be transferred under 28 U.S.C. § 1404(a) to that other forum. Finally, under the ancient doctrine of *forum non conveniens*, there are circumstances under which a court may dismiss an action because of the chosen forum, while a proper venue is inconvenient. *See generally* Wright & Miller, <u>Fed. Prac. and Proc. § 3828</u>.

1.    <u>Transfer Under 28 U.S.C. §1406(a) is Not Warranted</u>

As demonstrated above, venue in the Eastern District of Pennsylvania is proper. Thus, transfer under 28 U.S.C. §1406(a), the statute warranting transfer when the original choice of venue is *improper*, is not applicable to the case at bar. (Emphasis added). Consequently, transfer under 28 U.S.C. §1406(a) is not warranted.

2.    Transfer Under 28 U.S.C. §1404(a) And The Doctrine of *Forum Non Conveniens* is Not Warranted Either

As set forth below, transfer of venue under either 28 U.S.C. §1404(a) or *forum non conveniens* is simply not appropriate as defendants have not met their burden, and transfer would merely shift the inconvenience from one party to another.[6]

Section 1404(a) provides: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See* 28 U.S.C. §1404(a). While the Court has discretion to order transfer, "transfers are not to be liberally granted." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). "The burden is on the moving party to establish that a balancing of the proper interests weighs in favor of the transfer, and unless the balance of conveniences of the parties is *strongly* in favor of the defendant, the plaintiff's choice of forum should prevail." Id. (Emphasis in original) Quite simply, neither the Bank nor the Law Firm defendants have demonstrated sufficient facts to warrant transfer of this case.

Consistent with this settled law of the Third Circuit, transfer will only be ordered when the balance of conveniences strongly favors transfer. *See* Shutte, 431 F.2d at 25. Transfer will not be ordered in cases where the conveniences are balanced or only slightly in favor of the Defendant. *See* Id.

"In determining whether the movant has established the appropriateness of transfer, the Court must consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum". Jumara v. State Farm, Inc., Co., 55 F.3d 873, 879 (3d Cir. 1995). "While there is no definitive formula or list of factors to consider" courts usually proceed in a three part analysis. *See* Id. Courts

---

[6] While the doctrine of *forum non conveniens* and transfer under 28 U.S.C. §1404(a) are two separate analyses, the thrust of both is on the convenience, or inconvenience of the parties. Thus, the plaintiff's analysis focuses on transfer under 28 U.S.C. §1404(a) which encompasses consideration of the convenience or inconvenience of the parties as one factor.

first consider whether the action "could have been brought" in the transferee district, and then go on to analyze the public and private interests protected by the language of §1404(a) to see if transfer is appropriate.

The first step of §1404(a) analysis is "for the Court to determine whether the action could have been brought in the transferee district." *See* Id.  The inquiry is thus whether Loeb's complaint could have been brought in the United States District Court for the District of Maryland.

For purposes of this Motion only, plaintiff is willing to assume that all parties would be subject to the jurisdiction of the United States District Court for the District of Maryland.  Further, because this is a diversity action, there would be the requisite diversity whether in the Eastern District for the District of Pennsylvania or in the District of Maryland.

After determining whether the action could have been brought in the transferee district, the Court must analyze the private interest to see if they favor transfer.  The "private interest" have included: (1) plaintiff's forum preference as manifested in the place of filing; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by the relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of the books and records.  *See* BABN Technologies Corp. v. Bruno, 25 F. Supp. 2d 593 (E.D. Pa. 1998).

"It is black letter law that a plaintiff's choice of forum is a paramount consideration in any determination of a transfer request, and that choice should not be disturbed lightly." Shutte, 431 F.2d at 25.  This deference is especially great when the plaintiff has filed suit in his "home turf".  *See* Dinterman v. Nationwide Mut. Ins., 26 F. Supp. 2d 747 (E.D. Pa. 1998).

In the case at bar, plaintiff has filed suit in his "home turf", the Eastern District of Pennsylvania.  Mr. Loeb's residence is located in Springfield, Pennsylvania, which is located within

the Eastern District of Pennsylvania.  Therefore, plaintiff's choice of forum is entitled to heightened deference, and should only be disturbed if there is a compelling reason to warrant transfer to the District of Maryland.  There is no such compelling reason.

An examination of the other private interests also leads to the conclusion that venue is proper in the Eastern District of Pennsylvania.  Courts will not order transfer when a transfer would merely shift the inconvenience from one party to another.  *See* Elbeco v. Estrella de Plato, Corp., 989 F. Supp. 669 (E.D. Pa. 1997).

Despite the mandate of Elbeco and other settled jurisprudence, the defendants are seeking to shift the burden, if any, from the defendants to the plaintiff.  Further, any inconvenience to the Bank is *de minimis* in that Bank of America does business in both Pennsylvania and Maryland. Presumably, the burden is equal with respect to suit in the Eastern District of Pennsylvania or the District of Maryland for Bank of America.

With respect to the final factors, location of witnesses and books and records, this factor also points to the Eastern District of Pennyslvania.  Both Bank of America and the Law Firm Defendants claim that venue in the Eastern District of Pennsylvania would be inconvenient as, allegedly, the witnesses and documents that they intend to call and use, respectively, are located outside of the Eastern District of Pennsylvania.  However, location of the books and witnesses outside of the venue is not a sufficient basis to transfer venue.

The case relied upon by Bank of America, Dernamed, Inc. v. Spa de Soleil, Inc., 152 F. Supp. 2d 780 (E.D. Pa. 2001), supports venue in the Eastern District.   In Dernamed, the Court denied a motion to transfer venue under 28 U.S.C. § 1404(a).  The Court in denying transfer noted "while it is true that some or all of the documents and many of the witnesses may be in California, this by itself is not enough to transfer venue."  Id. at 784.  The Court went on and stated "*it is only if witnesses*

*are unavailable for trial and documents are incapable of being produced in the forum that the convenience of the parties carries sufficient weight to render transfer appropriate.*" Id. (Emphasis added).

None of the defendants have alleged that witnesses and documents are unavailable or unable to be produced in the forum. Moreover, the distances involved in the case *sub judice* are much shorter than those in <u>Dernamed</u> (i.e. Philadelphia to Baltimore vs. Philadelphia to California).

In sum, the private interests point towards according plaintiff's choice of forum the heightened deference that it deserves.[7] Therefore, venue is appropriate in the Eastern District of Pennsylvania.

The next step in the 1404 analysis is to look at the public interests. *See* <u>Shutte</u>, 431 F.2d at 25. The "public interests" have included: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *See* <u>Jumara</u>, 55 F.3d at 879. An analysis of all of these public interests demonstrates that defendants have not met their heavy burden in establishing the appropriateness of a transfer.

As to the first factor, enforceability of judgments, principles of comity and the fact that we are dealing with two co-equal federal courts render this factor neutral. Similarly, court congestion, while an issue for all courts, does not appear to point to one forum over another.

---

[7]It is interesting to note that in the Law Firm Defendants website they advertise that they have litigated cases in the Southern District Court of New York, and the Federal Appeals Courts in the First, Second, Fourth, Seventh, and Eighth Circuits. *See* printout of website attached hereto as Exhibit "B". It is difficult to understand how Defendants can claim that they will suffer any financial hardship by litigating in Philadelphia, when it is readily apparent that they have litigated cases in jurisdictions much farther away.

The practical considerations also do not warrant transfer of this case. As discussed above, the location of witnesses and documents is simply not a factor in this case. Consequently, this factor also does not warrant transfer.

The factors relating to local interest in deciding local controversies at home and public policy, point to venue in the Eastern District of Pennsylvania. As the plaintiff's complaint and this brief make clear, the person who has suffered injuries in this case is a Pennsylvania resident. Consequently, Pennsylvania has the greater interest in affording its citizens a remedy under the law. *See* Else v. Inflight Cinema Int'l., Inc., 465 F. Supp. 1239, 1242 (W.D. Pa. 1979) (holding in part that Pennsylvania Long Arm Statute conferred personal jurisdiction over out of state tortfeasor).

Finally, the issue of state law does not warrant transfer. Admittedly, Maryland law will govern the issues of trust law. However, the causes of action that plaintiff is suing upon are universal concepts of trust law. As defendants admit, much of Maryland's law parrots the leading treatises on trusts. Moreover, as detailed above and herein, complex legal analysis will not be necessary as there are *per se* rules against much of defendants' conduct. Further, the remaining counts of the complaint also deal with simple legal issues such as negligence, malpractice, fraud, and conspiracy. Assuming *arguendo* that Maryland law applies to these claims, a federal judge will have no difficulties in applying these legal concepts. *See* Atlantic Richfield Co. v. Stearns-Roger, Inc., 379 F. Supp. 869, 872 (E.D. Pa. 1974) (venue transfer denied; little weight should be given to the fact that foreign law controls the disposition of the case); *see also* Security Warehouse Historic Assocs. v. Lexington Ins. Co., 1987 WL 6004 * 4 (E.D. Pa. 1987) (venue transfer denied; even if Minnesota law applies, a district court is fully capable of applying the law of another state as the transfer cases recognize). In sum, with the exception of possibly the last factor discussed above, the public interests do not warrant a transfer of venue.

The Court should deny defendants' motion to transfer because defendants are merely seeking to shift the inconvenience, if any, onto the plaintiff in this matter. The defendants have not met their heavy burden in demonstrating the need for a venue transfer under 28 U.S.C. § 1404(a). Consequently, plaintiff's choice of venue in the Eastern District of Pennsylvania should not be disturbed.

**D.    Plaintiff Bertram Loeb's Complaint States Claims Upon Which Relief Can be Granted**

1.    Standard of Review

In considering a motion to dismiss for failure to state a claim, the Court is required to accept as true all allegations contained in the complaint, as well as reasonable inferences deducible therefrom, as construed in the light most favorable to the non-moving party. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); *see also* Fed. R. Civ. P.12(b)(6). "To decide a motion to dismiss, courts consider only the allegations in the complaint, exhibits attached to the complaint, and matters of public record." Pension Benefit Guarantee Corp. v. White Consolidated Industries, 998 F.2d 1192 (3d Cir. 1993). Courts disfavor dismissing complaints before the reception of any evidence, because a grant of such relief terminates the litigation before the parties have had their day in court. See Vogelstein v. National Screen Serv. Corp., 204 F. Supp. 591, 595 (E.D. Pa. 1962), *aff'd*, 310 F. 2d 738 (3d Cir. 1962), *cert. denied*, 374 U.S. 840 (1963). The complaint "need only set out a generalized statement of facts from which a defendant is informed with reasonable particularity of a cognizable claim against him." U.S. v. Provident Nat. Bank, 259 F. Supp. 373 (E.D. Pa. 1966) *cert. denied* 385 U.S. 1034 (1966); *see also* Fed. R. Civ. P. 8.

Where the District Court accepts and considers documents outside the pleadings in the course of disposing of a dismissal motion, that motion will be converted into a motion for summary

judgment. *See* <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 578 (3d Cir. 1996). "It is indeed well established that prior to converting a motion to dismiss into a motion for summary judgment, the District Court must provide adequate notice to the parties". <u>Id</u>.[8]

> 2.    Plaintiff Loeb Has Standing to Assert The Claims Contained in His Complaint; All of The Allegations of The Complaint Are Neccessary To Understand The Defendants' Wrongdoing; And Loeb's Claims Need Not be <u>Brought as a Shareholder Derivative Action</u>

In their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), defendants misconstrue the allegations of the complaint.    Defendants argue that Loeb sued the wrong parties in the wrong manner.  Defendants claim Loeb should have brought a shareholder's derivative suit rather than a direct action against the Defendants.[9]   However, a review of the Complaint - as defendants' concede in their argument regarding the plaintiff's entitlement to a jury trial - focuses on the breach of trust and conflict of interest issues which predominate the case.

As detailed in Loeb's Complaint, the defendants have committed various wrongs in connection with two trusts:  the Celia Lust Kolbe Trust and the Bertram Loeb Family Irrevocable Trust Agreement.[10]   *See* Complaint ¶¶ 19-32; 71-90.   The trusts own a combined 54.18% interest

---

[8]  If the Court is inclined to consider the Affidavits offered by the Defendants for any other purpose than its analysis of jurisdiction, Plaintiff Loeb respectfully requests the opportunity to take discovery. *See* Section III K, *infra*.

[9]  Defendants' motion to strike irrelevant allegations should also be denied.  In order to fully understand the pervasive relationship amongst the parties to this action, and the egregious nature of the conflicts of interest, it is necessary to have a complete factual background of all of the trusts that defendants are involved in.  Moreover, to suggest that allegations concerning the Betram Loeb Irrevocable Trust are irrelevant ignores the fact that plaintiff is the settlor and beneficiary of this trust, and the fact that defendants Garten and Fedder & Garten, P.A. drafted this document after soliciting plaintiff in Pennsylvania.

[10]  Each trust, drafted by Garten and Fedder & Garten, P.A., provides that they are to be Maryland trusts and administered according to Maryland law, despite the fact that Loeb has been, and is, a citizen of Pennsylvania.

in Beta Corporation, a Maryland subchapter "S" corporation.  Beta Corporation is a trust asset whose shares are controlled by the trustees.  *See* Complaint ¶¶ 118-127.

The allegations of the Complaint revolve around:  (1) whether the trustees breached their duty of loyalty to Loeb, as a trust beneficiary, when Garten[11] was permitted to serve as co-trustee while also serving as corporate officer, director and counsel to Beta Corporation; (2) whether the trustees breached their duty of loyalty to Loeb when they profited from transactions that conflicted with their fiduciary duties as trustee; and (3) whether the trustees breached their duty of loyalty to Loeb, when they failed to object to the wrongful actions of their co-trustees.  As the Complaint makes clear, the conduct complained of involves the trusts, and incidentally Beta Corporation.[12]  As demonstrated below, the manner in which Loeb has brought suit is proper.

> a.    It is an Impermissible Conflict of Interest For a Trustee to Serve as Both Trustee, Officer, Director, and Employee of a Controlled Corporation.  Such Conflict is Never Permitted under Maryland Law

When a trustee controls a corporation by virtue of holding stock in trust, and the trustee appoints himself as an officer and/or director of the corporation, then a conflict of interest exists between the duty of loyalty to the trust beneficiaries and the duty of loyalty to the corporation. George G. Bogert, *Trusts and Trustees* § 543(Q) at 401 (1993).

In Maryland, ***it is never permissible*** for a trustee to also serve as a salaried officer or employee of a controlled corporation even if the assumption of the management position was proper. *See* Mangels v. Tippett, 173 A. 191 (Md. 1934) (emphasis added).  As the court in Mangels noted:

---

[11] Subsequent to the filing of the Complaint, the Bank of America placed a Bank officer, Doug Ayers, onto the Beta Board of Directors.  As such, Bank of America remains in a continuing conflict of interest and is in breach of its duty of loyalty to which Bert Loeb objects.

[12] Additionally, the information relating to the formation of the trusts at issue in this litigation and the formation of Beta Corporation are important background facts which are necessary to fully understand the relationship of the parties.  Therefore, defendants' motion to strike these allegations should be denied.

> it is therefore a gross violation of his duty for any trustee or director, acting in his fiduciary capacity, to enter into any contract with himself connected with the trust or its management; such a contract is voidable, and may be defeated and set aside at the suit of the beneficiary.

Id. at 196; *see also* McDaniel v. Hughes, 111 A.2d 204 (Md. 1955) (trustee may not place himself in any positional conflict of interest, regardless of whether the position benefits the trust); Schmidt v. Chambers, 288 A.2d 356 (Md. 1972) (Court surcharged and removed fiduciary who was corporation's general counsel, and later co-executor of the principal shareholder's estate and testamentary trustee under will because of conflict of interest when fiduciary also served as corporate officer after shareholder's death; the court found no bad faith on the part of the fiduciary, however the conflict alone justified removal as trustee.); *see also* Austin W. Scott & William F. Fratcher, Scott on Trusts, §193.2 (4th ed. 2000).

The court in Mangels made sure that its holding not only included conflicts when a trustee served as corporate officer, but in other fiduciary capacities as well, such as agent, partner, guardian, executor, administrator and the like.  *See* Mangels, 173 A. at 196.  This includes instances when a trustee is serving as an attorney for the trust. *See* Carey v. Safe Deposit & Trust Co., 178 A. 242 (Md. 1935) (trustee, who was also an attorney, hired himself and his firm to perform legal services on behalf of the trusts; citing Mangels, the Court ordered trustee to account for commissions and any other private profit in the trustee's administration of the trusts).

Not only have the trustees breached their fiduciary duty of loyalty by serving as trustees and as officers, directors and counsel, but also they have breached their duty of loyalty by profiting from transactions that conflict with their duty.  To somehow say that these *per se* violations of fiduciary duty should have been brought as a shareholder's derivative action ignores the allegations of the complaint (and the arguments advanced by the *defendants* in their effort to avoid a jury trial).

b.    Trustees Are Liable For Their Actions Because They Have a Controlling Interest in Beta Corporation

When a trustee holds all of the shares of a corporation or a sufficient number of shares to give him substantial control over the election of directors and ultimately over administration for the affairs of the corporation, the courts in Maryland have permitted trust beneficiaries to bring suit against such trustee(s) who commits a breach of trust when the breach causes a diminution in the value of the corporation.  In such instances, the trustee has been held accountable to the beneficiaries.  *See* Mangels, 173 A. at 198.

Unlike Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26 (1976) and Herlihy v. Ply-Gem Industries, Inc., 752 F. Supp. 1282 (D.Md. 1990), cited by defendants, where the plaintiff could not show some actual injury or harm caused by the conduct of the named defendant, the damages in this matter are directly linked to the defendants' conduct.  By virtue of controlling 74.68% of Beta Corporation, the defendants appointed Garten as Director, President, Secretary and corporate counsel (and appointed his partner Dagurt as Director, Vice President and Treasurer)[13].  Because of his dual position, Garten has breached his duty of loyalty by placing himself into a continuing positional conflict of interest, and thereby profiting from such position.  *See* Complaint ¶¶ 53-57, 62, 63, 65, 92, 93, 94, 99, 103, 104, 108, 112, 114, 116.

The Complaint pleads that Bank is similarly liable for a breach of trust, not only for its own conduct, but also for the conduct of its co-trustee.  *See* Complaint ¶¶ 54, 59, 63, 65, 68, 70, 99, 108, 116, 126.  Bank of America is liable as co-trustee for, *inter alia*, its failure to redress Garten's breach.  It is the duty of each co-trustee to use reasonable care to prevent the other co-trustee from committing a breach of trust.  If one co-trustee were to commit a breach of trust, the other co-trustee

---

[13] Trustees have also appointed Doug Ayers of the Bank as a Director subsequent to the filing of the Complaint.

is liable if he approves or acquiesces to the breach or where he neglects to take the proper steps to compel the other co-trustee to redress the breach. *See generally* Zimmerman v. Coblentz, 185 A.342 (Md. 1936); *see also* Austin Scott & William Fratcher, Scott on Trusts §§ 184, 224 (4th ed. 1987).

As such, Garten (and now Ayers) should be removed and account for omissions. *See* Maryland Code § 15-112(a)(iv); Carey, 178 A. at 242 (trustee, who was also an attorney, hired himself and his firm to perform legal services on behalf of the trusts; citing Mangels, the Court ordered trustee to account for commissions and any other private profit in the trustee's administration of the trusts).

Like the trustees in Mangels, McDaniel and Schmidt, the trustees in this case have breached their fiduciary duty of loyalty by, *inter alia*, permitting Garten (and now Ayers as Director) to serve as both trustee and corporate officer, director and counsel. In each of these cases, the beneficiary was entitled to bring suit to remove the trustee and surcharge him for profits while serving as the corporate officer, director and/or counsel. Consequently, Loeb too should be allowed to bring suit in the manner set forth in his complaint.

> c.  An Action For Breach of Fiduciary Duty is Proper Because Defendants Breached Their Duty of Loyalty by Permitting Garten to Serve as Co-trustee, Director, President, Secretary and Counsel For Beta Corporation, And For Taking Profits That Conflict With Their Fiduciary Duties

Finally, as discussed *supra*, the crux of Loeb's Complaint is that defendants breached their duty of loyalty because of conflicts of interest. The courts in Maryland have permitted trust beneficiaries to sue trustees for breach of loyalty when the trustee holds a controlling interest in a close corporation and then appoints himself, and profits from such appointment, as an officer, director and/or employee. *See* Mangels, 173 A. at 198; McDaniel, 111 A.2d at 204; Schmidt, 288 A.2d at 356.

Unlike the plaintiffs in the cases cited in defendants' motion, Loeb has alleged that defendants breached their duty of loyalty as trustee, and **not** as a corporate officer/director. *See* Complaint ¶¶ 53-57, 62, 63, 65, 92, 93, 94, 99, 103, 104, 108, 112, 114, 116. (Emphasis added).

Defendants' attempt to convert plaintiff's allegations into a shareholder derivative suit, ignores the reality of the trust relationship. A trust beneficiary, who is, in a sense, the "stockholder" of the trust-held corporation, does not have the usual powers to keep management conduct in check. In a typical corporate setting, the stockholders can remove the directors by vote. But the trust beneficiary is typically unable to wield such power, including the case *sub judice*.

Because Loeb may bring an action against the trustees for breach of duty when the trustees are also serving as a self-appointed corporate officer, director, and/or agent of a controlled corporation, defendants' motion should be dismissed.

**E.    Due to The Relationship Among The Parties, The Ongoing Conspiracy Between The Defendants, And The Facts Alleged in The Complaint, Loeb's Claims Are Timely**

As discussed above and as is apparent from the face of the Complaint, Loeb is asserting both equitable claims and legal claims. In determining the appropriate limitations period, equity applies the doctrine of laches, which normally requires that the defendant show some prejudice in addition to and as a result of the delay in bringing the action. *See* Parker v. Board of Elec. Sup., 186 A.2d 195 (Md. 1962); Staley v. Staley, 248 A.2d 655 (Md. 1968); Boyd v. Mercantile-Safe Deposit & Trust Co., 344 A.2d 148 (Md. App. 1975). But if there is an action at law analogous to the case before it, a court of equity will apply the statute of limitations applicable to that analogous legal action. Desser v. Woods, 296 A.2d 586 (Md. 1972); Rettaliata v. Sullivan, 119 A.2d 420 (Md. 1956); Brashears v. Collision 115 A.2d 289 (Md. 1955).

The  analogous limitations period which may be applied to Loeb's claims would be three years.  *See* Md. Code Ann.§ 5-101.  Maryland allows an exception to a limitations period which would permit a plaintiff to plead  matters that occur more than three years earlier.  If knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be tolled until such time as the party discovers or should have discovered the fraud.  *See* Md. Code Ann.§ 5-203.  If a confidential relationship existed between the parties, then the period tolled because of fraud,  can be tolled even further.  *See* Desser v. Woods, 296 A.2d at 593 *citing* Herring v. Offutt, 295 A.2d 876 (Md. 1972).

The Herring court pointed out that a confidential relationship, by its nature, gives the confiding party the right to relax his or her vigilance to a certain extent and rely on both the good faith of the other party and that party's duty to disclose all material facts and, as a result, the confiding party has no duty to make inquiries until something occurs to make him or her suspicious. Herring, 295 A.2d at 880. When a confidential relationship is established, the burden is then upon the trusted party to show that the challenged transaction was freely and fairly made, and that no unfair or unreasonable advantage was taken of the confiding party in the confidential relationship. *See* Owings v. Owings, 196 A.2d 908, 911; Upman v. Thomey, 125 A. 860, 864;  26A C.J.S. *Deeds* §193 (1956). Questions as to the confiding party's failure to discover his cause of action or to defendants' concealment of their wrong, is ordinarily a question for the trier of fact. New England Mutual Life Ins. Co. v. Swain, 60 A. 469 (Md. 1905).  Thus, in Frederick Road Ltd. Partnership v. Brown & Sturm, 756 A.2d 963, 976 (Md. 2000), the highest court of Maryland reversed the grant of summary judgment in favor of the lawyer defendants finding that fact issues remained for a determination by the trier of fact.

It is well settled that an attorney-client relationship is considered a confidential relationship ". . .because the confidential and fiduciary relationship enables an attorney to exercise a very strong influence over his client and often affords him opportunities to obtain undue advantage by availing himself of the client's necessities, credulity and liberality." Hughes v. McDaniel, 202 Md. 626, 633, 98 A.2d 1, 4 (1953); s*ee also* Frederick Road Limited Partnership, 756 A.2d at 977.

Although a confidential relationship is not always a fiduciary relationship, it is clear that a fiduciary relationship, such as that between trustee and beneficiary, is a confidential relationship since it "carries with it the requirement of utmost good faith and loyalty and the obligation of the fiduciary to make full disclosure of all known information that is significant and material to the affairs . . . of the fiduciary relationship . . . the principle of utmost good faith covers not only dealings and transactions occurring during the fiduciary relationship but also those taking place during the negotiations leading to the formation of the fiduciary relationship." *See* Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc., 283 Md. 296, 323-324, 389 A.2d 887, 904 (1978).

In addition, defendants' argument ignores plaintiffs' allegations of the ongoing nature of the defendants' conspiracy. Maryland adheres to the rule that "the time with respect to the offense of conspiracy is measured from the date of the end of the conspiracy." Mills v. State of Maryland, 279 A.2d 473, 481 (Md. Ct. Spec. App. 1971). This law is in accord with the Supreme Court case of United States v. Kissel where Justice Holmes stated:

> But when the plot contemplates bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators to keep it up, and there is such continuous cooperation, it is a perversion of natural thought and of natural language to call such continuous co-operation a cinematographic series of distinct conspiracies, rather than to call it a single one."

United States v. Kissel, 218 U.S. 601, 607 (1910) *cited by* Greenwald v. State of Maryland, 157 A.2d 119, 123 (Md. 1960).

As detailed in the Complaint, the majority of the alleged wrongdoing has occurred within the applicable statute of limitations. *See* Complaint ¶¶ 91-127. Since these claims are timely, and are all alleged to be part of defendants' ongoing conspiracy, any other claims which are part of the conspiracy are timely as well.

Moreover, due to the confidential relationship which exists between Loeb and the defendants, even the claims related to transactions which occurred more than three years ago are timely. *See e.g.* Complaint ¶¶ 53, 62, 65. A confidential relationship has existed between Garten, the Bank and Loeb since Loeb became a beneficiary of the Kolbe Trust in 1984. *See* Complaint ¶¶ 25, 36, 38. An additional confidential relationship has existed since Garten became Loeb's personal attorney in 1996. *See* Complaint ¶¶ 71-90.

By virtue of their relationship with Loeb, Loeb has trusted and relied upon defendants and now realizes that this trust was misplaced. The defendants have fraudulently concealed the breach of loyalty by Garten. They never advised Loeb that Garten was in breach of his duties. Similarly, they made conscientious efforts to hide profits taken by each of them during the transactions averred in the Complaint. *See* Complaint ¶¶134, 139, 140.

Finally, the Complaint details the ongoing nature of the conspiracy which bring it within the applicable statute of limitations. *See* Complaint ¶¶ 44, 45, 126, 154, 155. Because of these facts, Loeb's complaint is timely.

Defendants' motion should be dismissed since the Complaint contains allegations of fraud and a confidential relationship between the parties, thereby extending the applicable limitations period or laches until such time as when Loeb discovered the cause of action. At a minimum, factual issues exist which preclude the relief sought by defendants.

**F.    The Fraud Allegations of The Loeb Complaint Are Pled With The Required Particularity**

Rule 9(b) of the Federal Rules of Civil Procedure requires "in all averments of fraud, the circumstances constituting the fraud shall be stated with particularity."  However, this requirement must be read in conjunction with the notice pleading of the Federal Rules of Civil Procedure.  "Rule 9(b) is not meant to return courts to the days of code pleadings when suits were dismissed if a complaint failed to precisely state every element of an allegation and every necessary fact."  Blumenthal Power Co., Inc. v. Browning-Ferris, Inc., 1995 WL 1902124, *10 (D. Md. 1995).[14]

Rule 9(b) is satisfied if a party pleads the facts, such as who, what, when, where and why, constituting the fraud.  *See e.g.* Id. at *10 -*11; *see also* Wang Laboratories, Inc. v. Burts, 612 F. Supp. 441, 445 (D. Md. 1984).  Despite Defendants' protestations to the contrary, Plaintiff has satisfied the standard under Rule 9(b) and pled the necessary elements of fraud.

The fraud that Plaintiff is complaining of is concealment, by the Defendants, of their violations of their various fiduciary duties, and the complete failure to disclose the nature and extent of the fees that all defendants were charging the trusts and Beta Corporation.  The allegations of the Complaint clearly detail the nature of the fraud that Defendants' committed.  *See* Complaint ¶¶ 51, 54-55, 58-59,63, 69, 70, 73, 89, 96, 98-100,107-109, 115-117, 124, 126, 139.  The Plaintiff has connected these wrongful acts to specific dated transactions.  *See* Complaint ¶¶ 47, 60, 71, 74, 84, 91, 101, 110.  And, finally,  the Plaintiff has alleged that the foregoing fraudulent conduct was made with the requisite scienter.  *See* Complaint ¶¶ 134, 142,

---

[14] Courts are also more lenient when the specific facts of the fraud lie within the knowledge of the defendants.  *See* Blumenthal, 1995 WL 1902124 *11.  Such as the case here when part of the fraud lies in non-disclosure by the defendants.  *Accord* Id.; *see also* EP Medsystems, Inc. v. Echocath, Inc., 235 F.2d 865 (3d Cir. 2000).

In light of the foregoing, Defendants' motion to dismiss Plaintiff's fraud claims and for a more definite statement should be denied.

G.    **Plaintiff is Entitled to a Trial by Jury on All Issues so Triable**

In yet another attempt to shift the Court's attention from the incredible violations of fiduciary duty and other wrongful conduct, the Defendants seek to strike Plaintiff's request for a jury trial. The Court need not labor on this point.

As stated above, Plaintiff's complaint contains six counts: (I) Breach of fiduciary duty/relationship of trust and confidence; (II) Fraud; (III) Negligent Misrepresentation; (IV) Negligence/Malpractice; (V) Common law conspiracy; and (VI) Constructive trust; demand for accounting and removal of defendants as fiduciaries. Plaintiff's complaint also contained a jury trial demand which requested a trial by jury on all issues so triable.

The inquiry as to whether Plaintiff is entitled to a trial by jury is straightforward. The Court determines whether the cause of action was triable by jury at common law; if it was, a jury trial may be had. *See e.g.* <u>Kann v. Kann</u>, 690 A.2d 509, 514 (Md. 1997) (cited by Defendants and holding in part that breach of trust claims are equitable in nature).

With the exception of Counts I and VI, these claims were triable to a jury at common law, and thus Plaintiff is entitled to a trial by jury on those claims. *See, e.g.*, <u>Pickett, Houlon & Berman v. Haislip</u>, 533 A.2d 287, 296 (Md. Ct. Spec. App. 1987) (negligence and legal malpractice action based on negligence entitles party to a trial by jury); <u>Martin v. Pepsi-Cola Bottling Co.</u>, 639 F. Supp. 931, 932-33 (D. Md. 1986)(Fraud and conspiracy claims are entitled to a trial by jury), *see also* <u>Hodgin v. Jefferson</u>, 447 F. Supp. 804, 809-10 (D. Md. 1978)(Conspiracy is triable to a jury).

Defendants' assertion that because all of the claims revolve around the flagrant breaches of trust by the defendants, an equitable action, all claims should be heard by the Court rather than a jury

is incorrect.  The law is clear that the right to a trial by jury on those claims so triable shall remain

inviolate.  *See* <u>Mattingly v. Mattingly</u>, 607 A.2d 575, 579 (Md. Ct. Spec. App. 1992).  Further, even

if there are factual issues that are common to both legal and equitable claims, the jury may hear all

evidence, and the Court can parse which claims will be decided by the jury. *See* <u>Id</u>.

In addition to the foregoing, the law is clear that, pursuant to Fed.R.Civ.P. 38(b), where legal

and equitable claims are presented, the district court should submit the legal issues to a jury, and the

district court can determine any equitable issues, such as injunctions.  *See* <u>National Union Elec. Corp.</u>

<u>v. Wilson</u>, (6th Cir. 1970) (reversing the district court's denial of a jury trial to plaintiff).  Plaintiff has

an absolute right to a jury trial with respect to its legal claims.

Therefore, defendants' motion to strike Plaintiff's jury demand should be denied.

I.    <u>**Plaintiff's Request For Punitive Damages is Proper And Should Not be Stricken**</u>

Similarly, Defendants' argument regarding punitive damages is without merit.  As pointed out

by Defendants, punitive damages may not be recoverable in equitable actions against a trustee.  *See*

<u>Kann</u>, 690 A.2d at 520-21.[15]  However, as discussed in the section immediately above,  the majority

of Plaintiff's claims are legal in nature.

Under Maryland law, "the purpose of punitive damages relate entirely to the nature of

defendants's conduct."  <u>Owens-Illinois, Inc. v. Zenobia</u>, 601 A.2d 633, 649 (Md. 1992) (vacating

order of lower court and defining the standard for imposing punitive damages).  The purpose of

punitive damages is punishment and deterrence.  *See* <u>Id</u>.  "To be entitled to punitive damages there

---

[15] The court in <u>Kann</u> does note that punitive damages may not be available under
Maryland law for breaches of fiduciary duty by a trustee.  However, the court goes on to note that
not all breaches of fiduciary duty are the same and for "some breaches the remedy may be at law,
for others it may be exclusively at equity, and for still others there may be concurrent remedies."
<u>Kann</u>, 690 A.2d at 519.

must be an element of fraud, or malice or evil intent entering into and forming part of the wrongful act." Id. at 650.

In the case *sub judice*, the award of punitive damages is warranted to punish the defendants and to deter other trustees and fiduciaries from violating their duties under the law. Moreover, Plaintiff's allegations, if proven, satisfy the standard to impose punitive damages under Maryland law. *See e.g.* Complaint ¶¶ 134, 142, 154.

Therefore, defendants' motion to strike Plaintiff's request for punitive damages should be denied.

**J.    The Court Should Deny Defendants' Request For a More Definite Statement**

Here again, the defendants attempt to divert the Court's attention away from their inexcusable conduct by proffering a flimsy argument that somehow, after submitting a combined total of 40 pages of briefs and dozens of pages of supporting affidavits and documents, they need a more definite statement of the conduct complained of by the plaintiff. This motion should be denied.

When read in light of the liberal notice pleading standards of the Federal Rules of Civil Procedure, the plaintiff's 159 paragraph complaint puts the defendants on "notice" of the wrongs alleged. The defendants' briefs belie their claims of confusion. Defendants' attorneys skillfully advocate on behalf of their clients by attempting to divert the Court's attention away from the wrongful conduct alleged in the complaint. Discovery is the proper method of ascertaining details of a party's claims.    Defendants' motion for a more definite statement should be denied.

**K.    Alternatively, Loeb Requests Discovery**

If the Court requires additional evidence relating to an issue before ruling upon the Bank's and the Law Firm Defendants' Motions to Dismiss, Loeb should be given a fair opportunity to conduct discovery into the issues raised by the Defendants. Moreover, if the Court is inclined to

credit the affidavits of Defendants for any purpose other than the personal jurisdiction arguments, Loeb respectfully requests the opportunity to take discovery. *See* Fed. R. Civ. P. 26 and 56(f).[16] In order to refute Defendants' factual allegations, Loeb should be permitted to submit depositions and evidence relating to the Bank's and the Law Firm Defendants' allegations. However, many of those facts are known only to the Bank and the Law Firm Defendants. Accordingly, Loeb should be given an opportunity to refute Defendants' factual contentions.

## IV.    Conclusion

Plaintiff Bertram Loeb, asks for the Court's assistance in redressing the flagrant breaches of fiduciary duty and other wrongful conduct of Defendants Bank of America, Herbert S. Garten, Esquire, Sheldon G. Dagurt, Esquire and Fedder & Garten, P.A. For the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendants' motions to dismiss, motions to transfer venue, motion to require a more definite statement and motion to strike irrelevant allegations in their entirety.

<div style="margin-left:40%">

Respectfully submitted,

POWELL, TRACHTMAN, LOGAN, CARRLE, BOWMAN & LOMBARDO, P.C.

</div>

Dated: October 3, 2002         By: _____

<div style="margin-left:40%">

Paul A. Logan
Malcolm B. Jacobson
Thomas J. Bogar
Kevin K. Carton, Jr.

*Attorneys for Plaintiffs*

</div>

---

[16]Loeb makes this request for discovery pursuant to Federal Rules of Civil Procedure Rule 26 and 56 (f). *See also* Leonard A. Feinberg, Inc. v. Central Asia Capital Corp., 936 F. Supp. 250, 253 (E.D. Pa. 1996).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BERTRAM LOEB | : | |
| | : | |
| v. | : | No. 02-CV-3833 |
| | : | |
| BANK OF AMERICA, | : | |
| HERBERT S. GARTEN, ESQUIRE, | : | |
| SHELDON G. DAGURT, ESQUIRE, and | : | JURY TRIAL DEMANDED |
| FEDDER & GARTEN, P.A. | : | |

**O R D E R**

AND NOW, this _____ day of _____, 2002, upon consideration of the Motion to Dismiss to for Lack of Personal Jurisdiction and for Improper Venue or, in the Alternative, to Transfer Pursuant to 28 U.S.C. §1401(a), of defendants Herbert S. Garten, Sheldon G. Dagurt, and Fedder & Garten, P.A., and the response thereto, it is hereby ORDERED that said Motion is DENIED. The foregoing defendants shall file an Answer to the Complaint within twenty (20) days of the date of this Order.

BY THE COURT:

_____
                                                      J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BERTRAM LOEB | : | |
| | : | |
| v. | : | No. 02-CV-3833 |
| | : | |
| BANK OF AMERICA, | : | |
| HERBERT S. GARTEN, ESQUIRE, | : | |
| SHELDON G. DAGURT, ESQUIRE, and | : | JURY TRIAL DEMANDED |
| FEDDER & GARTEN, P.A. | : | |

**O R D E R**

AND NOW, this _____ day of _____, 2002, upon consideration of Defendant Bank of America's Motion to Dismiss Plaintiff's Complaint for Failure to Comply with the Applicable Law; or, in the Alternative, to Transfer Venue to the District of Maryland; or, in the Further Alternative, to Require a More Definite Statement and to Strike Irrelevant Allegations, and the Reply thereto, it is hereby ORDERED that Defendant Bank of America's Motion to Dismiss and/or Transfer is hereby DENIED. Defendant Bank of America shall file an Answer to the Complaint within twenty (20) days of the date of this Order.

BY THE COURT:

_____
                                                              J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BERTRAM LOEB | : | |
| | : | |
| v. | : | No. 02-CV-3833 |
| | : | |
| BANK OF AMERICA, | : | |
| HERBERT S. GARTEN, ESQUIRE, | : | |
| SHELDON G. DAGURT, ESQUIRE, and | : | JURY TRIAL DEMANDED |
| FEDDER & GARTEN, P.A. | : | |

## CERTIFICATE OF SERVICE

I, Kevin K. Carton, Jr., hereby certify that on this 3rd day of October, 2002, I caused a true and correct copy of Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, Motion to Transfer Venue, Motion to Require a More Definite Statement and Motion to Strike Irrelevant Allegations to be served upon the following counsel of record via first class mail, postage prepaid, addressed as follows:

Melissa H. Maxman, Esquire
Charlene Keller Fullmer, Esquire
Duane Morris, LLP
One Liberty Place, Suite 4200
Philadelphia, PA 19103
*Attorneys for Defendants,*
*Herbert S. Garten, Esquire,*
*Sheldon G. Dagurt, Esquire and*
*Fedder & Garten, P.A.*

Mark A. Klugheit, Esquire
Robert L. Freedman, Esquire
Erin A. Brennan, Esquire
Dechert, Price & Rhoads
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
*Attorneys for Defendant,*
*Bank of America*

AND

Andrew Jay Graham, Esquire
Geoffrey H. Genth, Esquire
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, MD 21202
*Attorneys for Defendants,*
*Herbert S. Garten, Esquire,*
*Sheldon G. Dagurt, Esquire and*
*Fedder & Garten, P.A.*

_____
Kevin K. Carton, Jr.