IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERTRAM LOEB,  Plaintiff | : : : : | |
| v. | : : : | 02-CV-3833 |
| BANK OF AMERICA, HERBERT S. GARTEN, ESQ., SHELDON S. DAGURT, ESQ., FEDDER & GARTEN  Defendants | : : : : | |

**Explanation & Order**

Plaintifff, Bertram Loeb ("Loeb") claims he has been the victim of violations of fiduciary duties, legal malpractice, negligence, fraud and conspiracy. Bank of America, (the "Bank"), Herbert S. Garten, Esq., ("Garten"), and Fedder & Garten, P.A., ("Fedder"), defendants in this diversity action, have filed a number of preliminary motions, including a motion directed to transferring venue pursuant to 28 U.S.C. §1406(a), 28 U.S.C. §1404(a), or the common law doctrine of *forum non conveniens*. Garten and Fedder have also moved to dismiss for lack of *in personam* jurisdiction. On February 24, 2003, I held an evidentiary hearing on jurisdiction and venue. After considering the briefs and the evidence presented at this hearing, I will grant the defendants' motion to transfer for failure of the plaintiff to establish venue pursuant to 28 U.S.C. §1406(a).

1

I.  **Factual and Procedural History**[1]

The relationship between Bertram Loeb and the defendants, Bank of America, Garten and Fedder spans more than thirty years. This relationship began in 1971 when defendant Garten, a resident of Maryland, an attorney licensed to practice only in Maryland and a member of the Maryland law firm Fedder & Garten, P.A., drafted the Celia Lust Kolbe Revocable Trust (the "Kolbe Trust"). The Kolbe Trust is a Maryland Trust. Loeb was named a beneficiary of the Kolbe Trust. Garten was named as one of the trustees of the Kolbe Trust and still holds that position today. Defendant Bank of America's predecessor in interest, the Maryland National Bank was also named a trustee of the Kolbe Trust and the Bank of America also still holds that position today.[2] The most significant asset of the Kolbe Trust is Beta Corporation ("Beta"), a real estate investment company incorporated in Maryland.[3] Garten has served as director and officer of Beta as well as counsel to both Beta and the Kolbe Trust. Garten has also provided Loeb with estate planning services and serves as the co-trustee of the Bertram Loeb Irrevocable Trust.

Over the years Beta and the Kolbe Trust executed a series of transactions. In 1988, Beta, the principal asset of the Kolbe Trust, sold property located in Beltsville, Maryland, as part of an IRC 1031, tax-deferred exchange. Beta then purchased commercial real estate in Oxnard,

---

[1] The February 24, 2003 evidentiary hearing was expressly limited to those facts pertaining to jurisdiction and venue. The facts that go to the merits of plaintiff's complaint were not considered and remain allegations. I will assume, for the purposes of this opinion and the following recitation of the facts, that the plaintiff will be able to prove these facts.

[2] The Bank of America is a Delaware Corporation with its principal place of business in Charlotte, North Carolina. The Bank regularly transacts business within the Eastern District of Pennsylvania.

[3] Bertram Loeb is a board member of Beta.

2

California. On July 11, 1994, Beta refinanced a $3,433,614 loan on the Oxnard, California property. On July 18, 2001, Beta sold a different property located in Bethesda, Maryland as part of another IRC 1031 tax-deferred exchange. On October 30, 2001, following the sale of the Bethesda property, Beta purchased property in Loveland, Colorado. On March 8, 2002, Beta borrowed $3,900,000 against the Loveland, CA property. Garten, acting in the capacity of director, president and secretary of Beta, co-Trustee of the Kolbe Trust, and, after 1996, co-Trustee of the Loeb Trust, and with the knowledge and consent of the Bank, retained himself and his firm, Fedder, to serve as counsel for these transactions. Garten and Fedder charged legal fees connected with these transactions and these fees were paid without any review by the Bank. Garten and Fedder were also paid various "commissions" and "professional fees."[4] On two occasions, the Bank also received commissions relating to these transactions.[5]

Sometime in 1996, Garten and Fedder also began representing plaintiff in various personal

---

[4] For the 1988 sale of the Beltville, Maryland property and purchase of real estate in Oxnard, California, Garten and Fedder received a "real estate commission" of approximately $441,000 in addition to the legal fees received from the same transactions. At the closing of the 1994 refinancing of the loan on the Oxnard, California property, Garten and Fedder were paid a "commission" of $175,000. For the 2002 sale of the Bethesda, Maryland property, Garten and Fedder were paid a "commission" of approximately $331,620 in addition to the legal fees received from the transaction. Garten and Fedder also received $105,390 in "professional fees" related to the transaction. For the 2001 purchase of property in Loveland, Colorado, Garten and Fedder were paid $35,000 for "professional fees" related to the transaction. An additional balance of $70,040.18 from this transaction was due Fedder, but was deferred.
In 2002, after Beta borrowed against the Loveland, Colorado property, Garten and Fedder were paid $106,410 for "professional fees" related to the transaction.

[5] At the closing of the 1994 refinancing of the loan on the Oxnard, California property, Nations Bank, a predecessor to the Bank, was paid a $25,000 "commission." The Bank was also paid $35,000 in "professional fees" related to the purchase of property in Loveland, Colorado.

estate planning matters.[6] On November 13, 1996, Loeb executed the Bertram Loeb Irrevocable Trust (the "Loeb Trust"), which was prepared and presented by Garten and Fedder to Loeb at Fedder's offices in Maryland. The Loeb Trust was established as a Maryland trust and, at the recommendation of Garten, Loeb withdrew 94 shares of Beta Corporation stock from the Kolbe Trust to fund the Loeb Trust. Garten was named as one of the initial trustees for the Loeb Trust and his son, Lawrence Garten, was named as his successor. Sometime in November, 1996, Loeb's Last Will and Testament was executed at Fedder's offices in Baltimore, Maryland. On March 31, 1998, Garten also presented to Loeb a "private annuity " agreement and at the recommendation of Garten, Loeb withdrew an additional 82 shares of Beta stock from the Kolbe Trust to fund the annuity. At some point in time, Garten also prepared a "Maryland Family Limited Partnership" for the plaintiff. Garten and Fedder met with Loeb in Maryland to discuss this estate planning and Loeb traveled to Maryland to sign all executory documents. While executing this estate planning work for Loeb, Garten and Fedder sent correspondence to Loeb in Pennsylvania and communicated with him by telephone. Garten did not, in those phone conversations or in the correspondence with Loeb, inform Loeb that he should consult with another attorney.

In conjunction with these activities of the Kolbe Trust, the Loeb Trust, and Beta, the defendants Garten, Fedder and the Bank were in regular communication with Loeb. The manner

---

[6]There is a discrepancy among the parties as to how this representation was initiated. Loeb asserts that Garten approached him, contacting Loeb by phone at his home in Springfield, Pennsylvania, to solicit this estate planning work. Garten denies this allegation and asserts that the trust agreement was initiated by the trust officers of Nations Bank, separate and apart from any meetings with Garten. Nonetheless, both Garten and Loeb agree that Garten and Fedder did not send Loeb a representation letter or a letter identifying any potential conflict of interest.

of communication varied over the course of this thirty-year relationship. Sometimes the defendants would telephone Loeb, sometimes Loeb would telephone the defendants. The defendants also communicated with Loeb via correspondence. This correspondence included memoranda explaining actions taken, tax documents and bills. Both Garten and Loeb noted that this communication either by telephone or correspondence was frequent. Although Garten and Loeb were in frequent contact, Garten never had a conversation with Loeb while Loeb was in Pennsylvania advising Loeb of any potential conflict of interest.

All of the substantial events relating to the transactions at issue occurred in Maryland. All of Beta's directors' meetings and stockholders' meetings were held in Maryland.[7] Loeb traveled to Baltimore, Maryland on many occasions for meetings addressing Beta business. The Loeb Trust was executed in Maryland. None of the fees paid to Garten and Fedder that are the subject of contention in the present action were ever paid here in Pennsylvania or by Loeb as a resident Pennsylvania. The Bank cut the checks in Maryland and paid Garten and Fedder in Maryland. On one occasion, Garten did meet with Loeb for dinner at the Four Seasons in Philadelphia in 1992, and the parties briefly discussed Beta business at this dinner.[8]

The central issues in Loeb's Complaint involve: (1) whether the trustees breached their

---

[7]Loeb participated in the July 13, 2002 Beta board meeting by telephone. At this meeting, the board reviewed the attorneys' fees and other disbursements relating to the IRC 1031 exchange of the Bethesda, Maryland property.

[8]Over the years, Garten also provided estate planning work for Loeb's brother Malcolm and his aunts Harriet Hammel and Julia Cooperman. Garten visited Loeb's aunts in Riddle Memorial Hospital in Pennsylvania on at least one occasion. However, because these visits in Pennsylvania were related to Loeb's aunts' estate planning and not to the transactions at issue here, these visits are irrelevant for the purpose of determining venue. Garten also visited Malcolm Loeb at his residence in Philadelphia. Beta business was discussed at this meeting, however, this meeting has only a tangential connection to the dispute in litigation.

duty of loyalty to Loeb as a trust beneficiary when Garten served as co-trustee while also serving as a corporate officer, director, and counsel to Beta Corporation; (2) whether the trustees breached their duty of loyalty to Loeb when they profited from transactions that conflicted with their fiduciary duties as trustee; (3) whether the Bank of America as trustee breached its duty of loyalty to Loeb when it failed to object to the wrongful actions of its co-trustee; and (4) whether Garten and Fedder committed legal malpractice in their continued representation of Loeb despite potential conflicts of interest.[9]

Count I-III and Count V of plaintiff's complaint assert claims for breach of fiduciary duty, fraud, negligent misrepresentation and common law conspiracy against all defendants. Count IV asserts a claim of negligence and legal malpractice against Garten and Fedder. Count VI seeks a constructive trust on all assets and proceeds, demands an accounting and seeks removal of all defendants as fiduciaries.

**II.    Personal Jurisdiction**

Defendant Bank of America conceded personal jurisdiction. Defendants Garten and Fedder have moved to dismiss for lack of personal jurisdiction. Although Garten and Fedder's contacts with Pennsylvania are more than likely sufficient to establish personal jurisdiction over the defendants, I need not determine whether Garten and Fedder are amenable to jurisdiction in Pennsylvania because I hold that, as venue is improper in the Eastern District of Pennsylvania the

---

[9] Although plaintiff states a legal malpractice claim in his complaint, the briefs do not articulate the legal malpractice element as a central issue. At the February 24, 2003 evidentiary hearing, however, plaintiff stressed the legal malpractice element of his claim. Therefore, I will consider it as a central issue.

case is to be transferred to the District of Maryland.[10]

**III.    Venue**

Defendants contend that the Eastern District of Pennsylvania is an improper venue for this action, and that it should either be dismissed or transferred to the District of Maryland pursuant to 28 U.S.C. §1406(a)(1993)(permitting court to transfer a case filed in an improper venue to "any district ... in which it could have been brought"). In a case where federal jurisdiction is based on diversity, such as this one, venue is proper only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which action may otherwise be brought.

28 U.S.C. §1391(a)(1993 & Supp. 1999).

None of these provisions authorizes venue in the Eastern District of Pennsylvania. First, venue is inappropriate under §1391(a)(1) because all three defendants, Garten, Fedder, and the Bank do not reside in Pennsylvania.[11] Garten, an individual, is a resident of Maryland. Residence, for purposes of determining venue, is the place where an individual has his domicile or permanent

---

[10]The Third Circuit has held that the transferor court need not have jurisdiction over the defendant in order to grant plaintiff's transfer motion under 28 U.S.C. §1404(a). See United States v. Berkowitz, 328 F. 2d 358 (3d Cir. 1964); see also, Goldawr, Inc. v. Heiman, 369 U.S. 463 (1962); Schwilm v. Holbrook, 661 F.2d 12,15 (3d Cir. 1981).

[11]Plaintiff does not claim to have satisfied the first venue test and his complaint concedes that Garten is a resident of Maryland.

7

home. See Henshell Corp. v. Childerston, 1999 WL 549027 (E.D.Pa. July 28, 1999); Manley v. Engram, 755 F. 2d 1463, 1466 n.3 (11th Cir. 1985)("it is the individual's 'permanent' residence – i.e., his domicile – that is the benchmark for determining proper venue"). §1391(a)(1) only provides for venue where any defendant resides provided all the defendants reside in the same state. Thus, under §1391(a)(1), venue in the Eastern District of Pennsylvania would be inappropriate because all of the defendants do not reside here.[12] See, Ultimate Resource, Inc. v. Fross, 2000 WL 295107, at *3 (E.D.Pa. Mar 17, 2000)("Venue is proper ... where all of the defendants reside.")

Second, venue is only proper under §1391(a)(3) if one of the defendants is subject to personal jurisdiction in this district at the time the action is commenced and there is "no district in which the action may otherwise be brought." 28 U.S.C. §1391(a)(3). In this case, because there is a district, namely Maryland, where venue is proper, §1391(a)(3) will not provide a basis for venue in the Eastern District of Pennsylvania as there exists a "district in which the action may otherwise be brought." 28 U.S.C. §1391(a)(3); Henshell, at *3; Tucker v. Interscope Records, Inc., 1999 WL 80363, at *3 (E.D.Pa. Feb. 17, 1999).

Finally, §1391(a)(2) does not provide a basis for venue in the Eastern District of Pennsylvania because a substantial part of the actions or omissions giving rise to Loeb's claims did not occur in this district. 28 U.S.C.§1391(a)(2) provides that in diversity cases, suit may be

---

[12] 28 U.S.C.§1391(c) establishes the standards of residence for corporations for purposes of venue. Corporations are deemed to be residents of any judicial district in which they would be subject to personal jurisdiction at the time the action is commenced. At this time, I do not have to determine whether Fedder and Garten are subject to personal jurisdiction in this district and therefore residents for purposes of venue. It is enough that Garten is not a resident of Pennsylvania.

8

brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." As the Third Circuit stated in Cottman Transmission Systems v. Martino, 36 F.3d 291, 294 (3d Cir. 1994), "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough." The test for determining venue, therefore, "is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" Id., at 294 (citing Setco Enters. V. Robbins, 19 F. 3d 1278, 1281 (8th Cir. 1994)).

Loeb contends that venue is proper in this district because "some of the events complained of" occurred in this district. In his brief to this Court, Loeb asserts that there are three substantial acts that give rise to his cause of action in the Eastern District of Pennsylvania, namely: (1) "voluminous correspondence with the plaintiff who resides in the district;" (2) "telephone calls with the plaintiff at his home in the district;" (3) economic harm that had its *impact* in this district.

To establish venue, plaintiff relies upon correspondence and telephone calls. These are woefully insufficient to establish venue in this district. While the statute recognizes that a "substantial" part of the events or omissions forming the basis of a cause of action may occur in more than one district, incidental events, such as the correspondence and calls Loeb relies on, that have only some tangential connection with the dispute in litigation are not enough. See Cottman, at 294; Bahn Technologies Corp. v. Bruno, 25 F. Supp. 2d 593, 597-98 (E.D.Pa. 1998)(finding venue proper in district where allegedly breached contract was formed and took effect).

Lastly, plaintiff relies upon the impact of the economic harm to establish venue in this district. Relying on Wilson v. Pennsylvania State Police Dept., 1995 WL 129202 (E.D.Pa. 1995),

plaintiff argues that the impact of the economic harm in this district is sufficiently substantial to establish venue. Plaintiff's reliance on Wilson is misplaced. In Wilson, a case challenging the hiring practices of the Pennsylvania State Police Department, the court found that mere impact within a district of state policies emanating from outside of the district may be sufficient, when combined with other activities in the forum, to vest venue in the impacted district. The plaintiff in Wilson alleged several significant activities occurred within the impacted district. These activities, combined with the impact in the district were sufficient to vest jurisdiction.

Loeb, unlike the plaintiff in Wilson, alleges only that he received correspondence and telephone calls in the district. Loeb argues that these activities, combined with the impact in this district is sufficient to vest jurisdiction. In Cottman, the Third Circuit clearly rejected this reasoning, stating that "[e]ven though the result was...in Pennsylvania, the [acts or] omissions bringing about this result actually occurred in [another district]." Cottman, at 295(observing that, in breach of contract and trademark case, venue was appropriate in district where contract was formed, infringing conduct occurred and where trademarked materials were retained); Henshell, at *3-*4 (venue did not exists where Pennsylvania client alleged that Delaware lawyer had failed to give correct legal advice to client in Pennsylvania). Thus, Loeb's allegations of harm in this district are insufficient to meet the "substantial" requirements of §1391(a)(2).[13] See, Nagele v. Holy Redeemer Visiting Nurse Agency, Inc., 813 F. Supp. 1143, 1146 (E.D.Pa. 1993)(in

---

[13] Arguing that the impact of the harm in the district is sufficient to vest venue, Loeb also relies on the Eastern District of Arkansas' decision in Torchmark Corp. v. Rice, 945 F. Supp. 172, 179 (E.D. Ark. 1996). This case, however, does not affect my analysis. In Torchmark, unlike here, the parties met more than once in the forum district regarding the stock sale that was the basis of the plaintiff's claims and the claims actually arose out of that contact and the telephone communications between the parties. Id. at 179.

negligence case, venue was improper in Pennsylvania where all of allegedly negligent nursing care was provided in New Jersey); Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C., 927 F. Supp. 731, 736 (S.D.N.Y. 1996)(finding venue for legal malpractice claim was appropriate only in districts where attorneys resided, prepared for, and litigated the underlying action).

As venue is inappropriate in this district[14], the court will, in the interests of justice, transfer this action to the District of Maryland, where the action could have been brought originally and. See 28 U.S.C. §1406(a).

---

[14] Even if the events plaintiff cites are sufficiently substantial to give rise to Loeb's present cause of action, they would establish proper venue only as to Garten and Fedder. Loeb does not state any event which is substantial enough to give rise to his cause of action against the Bank in Pennsylvania. 28 U.S.C.§1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or it if be in the interest of justice, transfer such a case to any district or division in which it could have been brought." Dismissal of Loeb's claims against the Bank is not appropriate here and the proper procedure is to transfer.

The Third Circuit, in Cottman, held that in a situation such as this, where venue is proper for one defendant but not for another and dismissal is inappropriate, the district court has a choice. Cottman, at 296. One option is to transfer the entire case to another district that is proper for all defendants. In the case at hand, the proper district is Maryland. The other option is to sever the claims, retaining jurisdiction over one defendant and transferring the case as to the other defendant to an appropriate district. See, Id., at 296; In re Fine Paper Antitrust Litig., 685 F. 2d 810, 819 (3d Cir. 1982).

The choice in this case is clear. The court "should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28, 33-34 (3d Cir. 1993)(internal quotations omitted). Moreover, in the case at hand, where the conduct of co-defendants, Garten, and Fedder, as to whom venue may be proper "is central to the issues raised by the plaintiff against those subject to transfer, the grant of severance [is] not ordinarily consistent with the sound exercise of discretion." Cottman, at 296. The facts in this case leave no room for doubt that severance is not proper. I conclude, therefore, that, even if venue is proper as to Garten and Fedder, the proper procedure in this case is to transfer the case in its entirety to the District of Maryland.

11

**IV.     Defendants' Motion to Transfer Pursuant to 28 U.S.C. §1404(a) and the Doctrine of *Forum Non Conveniens***

Because this action will be transferred to the District Court of Maryland under §1406(a), I need not consider defendants' argument that transfer is also appropriate under 28 U.S.C. §1404(a) and the doctrine of *forum non conveniens*. This motion will, accordingly, be denied as moot. Because the standard for transfer pursuant to §1404(a) is lower than the standard for transfer pursuant to §1406(a), even if plaintiff were able to meet his burden under §1406(a) and establish that venue is proper in this district, I would still exercise my discretion under §1404(a) to transfer this action to the more appropriate District of Maryland where the majority of events and omissions occurred.

An Appropriate order follows.

**Order**

**AND NOW**, this _____ day of March 2003, after consideration of defendants motions, **IT IS ORDERED** that

I. Defendants' Motion to Transfer Pursuant to 28 U.S.C. §1406(a)(docket entry #8) is **GRANTED** and this action is **TRANSFERRED** to the United States District Court for the District of Maryland;

II. Defendants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (docket entry #6) is **DENIED AS MOOT**;

III. Defendants Motion to Transfer Pursuant to 28 U.S.C. §1404(a) and the Doctrine of _Forum Non Conveniens_ (docket entry #6) is **DENIED AS MOOT**.

_____

ANITA B. BRODY, J.

Copies **FAXED** on _____ to:          Copies **MAILED** on _____ to: